*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERALD MERRELL,

        Defendant-Appellant.

UNPUBLISHED
April 2, 2019

No. 339934
Wayne Circuit Court
LC No. 90-007914-01-FC

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Following a jury trial, Gerald Merrell was convicted of first-degree premeditated murder, MCL 750.316(1)(a). Merrell, who was 17 years old at the time of the murder, was sentenced to a term of life in prison without the possibility of parole. On direct appeal, this Court affirmed Merrell's conviction and sentence. *People v Harper*, unpublished per curiam opinion of the Court of Appeals, issued November 10, 1993 (Docket Nos. 136574 and 137566), pp 1-2.[1] On July 12, 2017—in light of the United States Supreme Court's decisions in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US ___; 136 S Ct 718; 193 L Ed 2d 599 (2016), and the Michigan Legislature's concomitant enactment of MCL 769.25 and MCL 769.25a—Merrell was resentenced to 37 to 60 years' imprisonment with credit for 9,865 days served. Merrell now appeals as of right. We affirm.

---

[1] Merrell was charged along with two codefendants, 22-year-old Steven Harper and 16-year-old John Woosck. Woosck, who provided the knife used to stab the victim and verbally encouraged Merrell during the murder, pleaded guilty to first-degree murder and was sentenced to five years' probation. Separate juries convicted Merrell and Harper of the same offense. Both Merrell and Harper appealed their convictions, and their appeals were consolidated. *People v Harper*, unpublished order of the Court of Appeals, entered April 14, 1992 (Docket Nos. 136574 and 137566).

Merrell's sole argument is that the trial court abused its discretion in resentencing him because a sentence of 37 to 60 years' imprisonment is disproportionate to Merrell and the offense committed. We disagree.

A juvenile offender's resentencing under MCL 769.25a is reviewed for an abuse of discretion. *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018). " '[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 131-132, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990) (alteration in original). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Skinner*, 502 Mich at 133 (quotation marks and citation omitted). "An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside this principled range of outcomes." *Id*. (quotation marks and citation omitted).

Because *Miller* applies retroactively, *Montgomery*, 577 US at ___; 136 S Ct at 732, a defendant previously sentenced to life without the possibility of parole for an offense committed when the defendant was less than 18 years old is entitled to resentencing. MCL 769.25a(2). The prosecution may seek the same life-without-parole sentence by filing a motion within a defined period of time. MCL 769.25a(4)(b). However, if the prosecution does not file such a motion, "the court shall sentence the individual to a term of imprisonment for which the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years." MCL 769.25a(4)(c). Although the trial court is not constitutionally obligated to make findings regarding the factors identified by the United States Supreme Court in *Miller* when resentencing a juvenile offender to a term of years, the "attributes of youth, such as those described in *Miller*," remain relevant. *People v Wines*, 323 Mich App 343, 352; 916 NW2d 855 (2018).[2] In explaining why children are constitutionally different from adults for purposes of sentencing, the *Miller* Court said:

> Because juveniles have diminished culpability and greater prospects for reform, . . . "they are less deserving of the most severe punishments." [Supreme Court precedent has] relied on three significant gaps between juveniles and adults. First, children have a " 'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from

---

[2] Although we recognize that an application and cross-application for leave to appeal are pending in our Supreme Court, MCR 7.215(J)(1) requires us to "follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."

horrific, crime-producing settings. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." [*Miller*, 567 US at 471 (citations omitted; some alteration in original).]

This Court has explained that, even when the possibility of a life-without-parole sentence is not at issue under MCL 769.25a, "consideration of these characteristics is in harmony with Michigan's long-established sentencing aims." *Wines*, 323 Mich App at 351.

> The objectives generally relevant to sentencing were first articulated by the Michigan Supreme Court in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), and have been often reiterated by our courts. In *Snow*, the Court explained that in imposing sentence, the court should "balance" the following objectives: (1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses. *Id*. The process of properly balancing these objectives in the case of a minor defendant necessitates consideration of the distinctive attributes of youth. For example, consideration of what the Supreme Court described as youth's "diminished culpability and greater prospects for reform," *Miller*, 567 US at 471, relates directly to *Snow*'s consideration of reformation and the protection of society. Similarly, the Supreme Court's reference to the "diminish[ed] . . . penological justifications for imposing the harshest sentences on juvenile offenders," *id*. at 472, correlates with *Snow*'s inclusion of punishment and deterrence as relevant factors in a sentencing determination. Taking the distinctive attributes of youth into account is consistent with both Michigan's long-stated sentencing objectives and the United States Supreme Court's judgment that "youth matters." *Id*. at 483. [*Wines*, 323 Mich App at 351-352.]

Accordingly, "a failure to consider the distinctive attributes of youth, such as those discussed in *Miller*, when sentencing a minor to a term of years pursuant to MCL 769.25a so undermines a sentencing judge's exercise of his or her discretion as to constitute reversible error." *Id*. at 352.

Here, the trial court did not impose a disproportionate sentence when it resentenced Merrell to 37 to 60 years' imprisonment. At the time of resentencing, Merrell was 44 years old and had been incarcerated for 27 years. The trial court acknowledged that, given the *Miller* decision, "a case for retribution is not as strong with a 17[-]year[-]old as it is with an adult." The trial court also acknowledged Merrell's efforts at rehabilitation, noting that he obtained his GED after arriving at prison with an eighth-grade education, that he maintained employment throughout his incarceration, and that his behavior and conduct while incarcerated vastly improved. In particular, Merrell had not received any recent misconduct tickets and his earlier 28 citations were not for violent behavior.

However, the trial court quickly shifted its focus to the murder, stating that it "was a planned, deliberate, ruthless[,] and brutal murder" that "deserves a punishment more than the minimum sentence . . . or time served as suggested by the defense in this matter." The trial court also acknowledged the devastating impact the murder had on the 25-year-old victim's family, particularly his children. Despite Merrell's participation in educational, volunteer, and work

opportunities offered during his incarceration, the trial court noted the jury's first-degree premeditated murder verdict must also be considered.

The trial court considered the *Miller* and *Snow* factors, thoughtfully weighing Merrell's youth at the time of the offense, his potential for rehabilitation, and the need for punishment based on the severity of his crime. *Wines*, 323 Mich App at 351-352. The trial court first acknowledged Merrell's rehabilitative efforts since his incarceration. The trial court then balanced his potential for reformation and rehabilitation against the severity of the crime, stating that more than the minimum sentence was required to punish Merrell. It also prefaced its resentencing decision by stating that the goal of retribution was lessened by the fact of Merrell's youth at the time of the offense. Further, the trial court read the trial transcripts and relied on all the information contained in the presentence investigation report (PSIR), which indicated Merrell did not have a prior criminal record, did not have mental health or substance abuse issues, and discussed his family background. Taking all of these factors into consideration, the trial court properly determined that a sentence of 37 to 60 years' imprisonment was appropriate.

In reaching this conclusion, we find a comparison between the circumstances at issue in *Wines* and those involved in this matter helpful. The defendant in *Wines* was charged with first-degree murder under a theory of aiding and abetting when he and his codefendant carjacked, robbed, and murdered a young woman who offered them a ride. *Id*. at 354. The defendant did not commit the killing; rather, he stood from a distance while his codefendant, who "appeared to be 'in charge,' " fired two gunshots, killing the victim. *Id*. at 353-354. The defendant also called the police the day after his codefendant shot the victim, assisted them in their investigation, and confessed to his role in the crimes. *Id*. at 356.

Here, on the other hand, the trial court recognized that Merrell was not convicted under an aiding-and-abetting theory, but was in fact the principal offender. As Harper restrained the incapacitated victim, who was highly intoxicated,[3] Merrell stabbed him, eight times—six times in the neck, once in the face, and once in the hand. Soon after, Merrell shared with a long-term acquaintance and fellow Young Guns' gang member that he and Woosck "killed somebody." Later, Woosck confirmed this and, by way of explanation, Merrell offered that the victim had touched, kissed, or grabbed Merrell's "girlfriend."[4] In Merrell's presence, Woosck explained that the murder was planned beforehand and that the restrained victim "woke up" upon being stabbed the first time. According to Woosck, the victim recognized he was bleeding and pleaded with his assailants not to kill him before Merrell stabbed him again.

---

[3] After the victim's body was found, the medical examiner determined the victim's blood-alcohol level was 0.27.

[4] The trial testimony revealed that the mother of Merrell's recent acquaintance reported that the victim had gotten "fresh" with her. However, the woman testified that "fresh" was not the word she meant to use and she further explained that she had accidentally sat on the victim's hand before he quickly moved it. Even so, the woman admitted that she told the police the victim was trying to put his hands on her butt. Moreover, the woman recalled Harper telling Merrell that the victim had been "messing around with" her to which she responded that she could handle herself.

-4-

Although Merrell suggests that he, like the defendant in *Wines*, 323 Mich App at 353, may have been pressured into committing the murder,[5] Merrell was the principal perpetrator. While we recognize that Merrell's argument concerning peer pressure is relevant, *Miller*, 567 US at 471 (discussing a juvenile's vulnerability to negative influences and outside pressures), such mitigating circumstances do not supplant the fact that Merrell ultimately acted to kill his incapacitated victim and did so in an exceptionally brutal manner.

Also, unlike the trial court in *Wines*, 323 Mich App at 356-357, the trial court in this case prefaced its resentencing decision with all of Merrell's accomplishments since his incarceration. The trial court indicated that it considered all the information in the PSIR, the allocutions of defense counsel and the prosecution, Merrell's statements, and the statements from the victim's family in making its decision. Thus, it clearly considered the relevant factors as previously established by this Court. *Id.* at 351-352. Further, while the sentence of 37 to 60 years' imprisonment exceeded the prosecution's recommendation of 35 to 60 years' imprisonment, the sentence was nonetheless within the range required by MCL 769.25a. On this record, Merrell's sentence is within the range of reasonable and principled outcomes.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Anica Letica

---

[5] After Merrell was arrested, he told the police he murdered his victim out of fear that Harper would kill him. Merrell's attorney later alleged that Harper had not only threatened Merrell, but also Merrell's family. Importantly, "duress is not a valid defense to homicide in Michigan." *People v Dittis*, 157 Mich App 38, 41; 403 NW2d 94 (1987). In any event, an eyewitness testified that after Harper mentioned it was time "to start messing with" the victim, Merrell replied that he "couldn't do it." Harper called Merrell "a wimp" who "chickened out." Without further communication, once everyone resumed their respective positions in the eyewitness's car, Harper quickly restrained the victim and Merrell repeatedly stabbed him.