PEOPLE *v* SNOW

OPINION OF THE COURT

1. EVIDENCE—JUDICIAL NOTICE—ESCAPE.
    The sentences in 234 prison escape cases were subject to judicial notice.

2. EVIDENCE—ADMISSIONS—ORAL ARGUMENT—APPEAL AND ERROR.
    Admissions in oral argument before an appellate court are not evidence; however, the Michigan Supreme Court can take notice of such admissions.

3. APPEAL AND ERROR—TRIAL—ISSUES—CIVIL CASES—CRIMINAL LAW —MISCARRIAGE OF JUSTICE—RECORD.
    Exception to the general rule that issues not raised in the trial court are not considered on appeal has been made in both civil and criminal cases; one reason for this exception is to prevent a miscarriage of justice and the one procedural requirement to having a new issue accepted for review is that there is a sufficient record upon which the Court could decide the issue.

4. ESCAPE—SENTENCE—MINIMUM SENTENCE—PLEA OF GUILTY—JURY TRIAL—RESENTENCING.
    A sentence of two to five years upon conviction of escaping from prison where defendant demanded a jury trial should be vacated and remanded for resentencing because this was a departure from the ordinary minimum sentence of 1-1/2 years on cases where defendants pled guilty to that offense and the record was silent as to the reason for such departure.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 740.
[2] 29 Am Jur 2d, Evidence § 597 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error § 726.
[4, 6] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue § 20.
[5] 5 Am Jur 2d, Appeal and Error § 867.
[7] 4 Am Jur 2d, Appeal and Error § 528.
[8] 21 Am Jur 2d, Criminal Law § 570.
[9] 21 Am Jur 2d, Criminal Law § 576 *et seq.*

5. CRIMINAL LAW—SENTENCING—APPEAL AND ERROR.
    To the extent that the Michigan Court of Appeals roamed
    afield from review of a single case and purported to review
    in general the sentencing policies of the Jackson County
    Circuit Court, it was in error.

DISSENTING OPINION

BLACK and T. E. BRENNAN, JJ.

6. ESCAPE—SENTENCE—MINIMUM SENTENCE—JURY TRIAL.
    *Conviction of escaping from prison should be affirmed without*
    *remand for sentencing where the trial judge, as well as the*
    *jury, heard the testimony concerning the offense and was*
    *fully informed concerning defendant's background by reason*
    *of the presentence investigation report as a sentence of*
    *two to five years under these circumstances would not be*
    *improper and there is nothing in the record to indicate that*
    *the trial judge did or would give defendant a longer minimum*
    *sentence in the event he stood trial before a jury (MCLA*
    *750.193).*

7. CRIMINAL LAW—APPEAL AND ERROR—ESCAPE—EX PARTE AFFI-
   DAVITS—RECORD—EXTRA-JUDICIAL MATTERS.
    *An omission in the record cannot be supplied by* ex parte
    *affidavit, an appellate Court does not consider such an affidavit*
    *when filed, cases in appellate Courts must be disposed of upon*
    *the record as made and not upon post-trial* ex parte *affidavits,*
    *appellate Courts do not consider matters* dehors *the record,*
    *and decisions on appeal cannot be motivated by extra-judicial*
    *matters; therefore, a post-trial* ex parte *affidavit of defend-*
    *ant's counsel purporting to record the disposition of every*
    *escape case over a certain period of time in the circuit court*
    *where defendant was convicted was improperly considered*
    *by the Michigan Court of Appeals as it had no validity and*
    *should have been stricken from the record of that Court.*

8. CRIMINAL LAW—SENTENCING—NEW TRIAL.
    *United States Supreme Court decision, which requires that*
    *whenever a judge imposes a more severe sentence upon a*
    *defendant after a new trial the reasons for his doing so must*
    *affirmatively appear, does not apply retroactively.*

9. CRIMINAL LAW—COURTS.
    *Courts should be the first to honor the responsibility for law*
    *and order; until our courts quit coddling criminals, dis-*
    *obedience and disrespect for law and order will continue.*

Appeal from Court of Appeals, Division 2, Levin, P. J., and Holbrook and Bronson, JJ., remanding Jackson, Gordon W. Britten, J. Submitted October 7, 1971. (No. 14 October Term 1971, Docket No. 53,143.) Decided February 25, 1972.

26 Mich App 510 affirmed.

Charles C. Snow was convicted of escaping from prison. Defendant appealed to the Court of Appeals. Remanded for resentencing. The people appeal. Affirmed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *Robert D. Flack,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *James R. Neuhard,* Assistant Defender, for defendant on appeal.

ADAMS, J.

## I. THE FACTS AND PROCEEDINGS

Defendant, Charles Snow, requested and received a jury trial on charges of escaping from the State Prison of Southern Michigan. The jury found him guilty. He was sentenced to a term of two to five years.

On appeal, Snow raised three issues in the Court of Appeals. The first two were that the trial court abused its discretion by allowing additional witnesses to be endorsed at trial and that, after such indorsement, the defense should have been granted a continuance. The witnesses were the actual arresting police officers in place of officers originally

but mistakenly listed on the information. These issues were decided adversely to defendant.

The third claim was that Snow's sentence was illegal because it was harsher than it would have been had he pled guilty. This third question was supported by an affidavit of Snow's attorney allegedly showing the disposition of every case[1] filed in the Jackson County Circuit Court in the 26 months from January 1, 1967 through February 28, 1969, compiled from the criminal docket cards of the court. During oral argument in the Court of Appeals, the Chief Assistant Prosecuting Attorney stated that the people do not challenge the accuracy of the figures in the affidavit. Judge Levin's opinion in the Court of Appeals summarized the dispositions as follows:

"During this period, 234 prison escape cases were filed in Jackson County Circuit Court:
"207 defendants pled guilty;
"13 were convicted by a jury;
"1 was convicted by a judge who sat without a jury.
"The remaining 13 cases were either dismissed or were still pending at the time the affidavit was prepared.

"The sentences imposed in the decided cases display a clear pattern. Of the 207 defendants who pled guilty, all but five received minimum sentences of one and one-half years or less. Three of these five were charged with other crimes. One had two prior convictions in Jackson County. In the remaining case, the defendant's sentence was made retroactive to July 17, 1967, although he was sentenced on October 7, 1968.

"The defendants who exercised their right to trial by jury fared differently. Twelve of the thirteen

---

[1] All prosecutions for escape are under MCLA 750.193; MSA 28.390, which provides for a penalty of "not more than 5 years" imprisonment.

defendants convicted by a jury received minimum sentences of two or more years. The thirteenth defendant attempted to enter a plea of guilty during his trial; he received a minimum sentence of one and one-half years. The lone defendant tried by the court also received a one and one-half year minimum sentence."

The Court of Appeals, Judge HOLBROOK dissenting, reversed and remanded for resentencing based upon the sentencing differential disclosed by the affidavit, a tacit admission of such differential by the Chief Assistant Prosecuting Attorney at oral argument before the Court of Appeals and violation of the indeterminate sentence statute. Upon resentencing, "no consideration is to be given to the fact that he [Snow] was convicted by a jury, rather than upon a plea of guilty." 26 Mich App 510, 520. Judge HOLBROOK dissented from a subsequent denial of motions for rehearing and to withhold, expunge and stay the opinion. 26 Mich App 521. The prosecutor was granted leave to appeal. The State Appellate Defender was appointed attorney for Snow. (384 Mich 794.)

The Jackson County prosecutor argues:

1) Since the *ex parte* affidavit was not part of the record, it should not have been considered on appeal;

2) The sentencing differential issue should first have been raised in the trial court by post trial motion; and

3) The prosecutor's admission in oral argument that the sentencing differential in escape cases between guilty pleas and jury convictions was understood by the Jackson County Bar to be standard policy could not be used as a basis for the Court of Appeals' decision.

The Appellate Defender points out that court judgments are admissible as evidence pursuant to MCLA 600.2106; MSA 27A.2106. The results in the 234 cases compiled in the affidavit could have been judicially noticed under the "one court of justice" doctrine. The sentencing differential was the third issue before the Court of Appeals. Judicial efficiency was served by dealing with it on appeal rather than by post trial motion.

As for the procedural issues raised by the prosecutor:

1) The 234 sentences were subject to judicial notice;

2) Admissions in oral argument are not evidence. However, the Court can take notice of such admissions as we did in *Wilkins* v *Ann Arbor City Clerk*, 385 Mich 670, 678 (1971).

3) In the usual case, issues not raised in the trial court are not considered on appeal. Exception to the general rule has been made in both civil and criminal cases.[2] One reason for this exception is to prevent a miscarriage of justice. The one procedural requirement to having a new issue accepted for review is that there is a sufficient record upon which the Court could decide the issue. *Meek* v *Wilson*, 283 Mich 679, 689 (1938). Because of the unusual nature of the essential issue raised by this appeal, the Court of Appeals did not err in addressing itself to it.

---

[2] *People* v *Holmes*, 292 Mich 212 (1940); *People* v *Kelsey*, 303 Mich 715 (1942); *Morris* v *Radley*, 306 Mich 689 (1943); *Dation* v *Ford Motor Co*, 314 Mich 152 (1946); *People* v *Dorrikas*, 354 Mich 303 (1958); *Prudential Insurance Co of America* v *Cusick*, 369 Mich 269 (1963); *Perin* v *Peuler*, 373 Mich 531 (1964); *Heider* v *Michigan Sugar Co*, 375 Mich 490 (1965); *Felcoskie* v *Lakey Foundry Corp*, 382 Mich 438 (1969); *People* v *Cole*, 382 Mich 695 (1969).

## II. The Essential Issue

Is the sentence of a trial court illegal if it was made harsher as a result of appellant's exercising his constitutional right to trial by jury and right not to plead guilty?

In *Williams* v *New York,* 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1949), certain basic considerations were found to be proper in determining an appropriate sentence: (a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses.

The record at the time of sentencing Snow is as follows:

"*The Court:* In the matter of Charles C. Snow. I have the pre-sentence investigation in this matter. Is there anything that you wish to say to the Court, Mr. Snow, or anything further, Mr. Kelly, than you previously communicated to the Court regarding this matter?

"*Mr. Kelly [defendant's attorney]*: No, sir.

"*The Court:* Mr. Snow?

"*Mr. Snow:* No, sir.

"*The Court:* Well, from looking over your rap sheet here, Mr. Snow, it appears that you have gotten into somewhat of a rut, and become, what is known in the trade as a paper hanger, that is an easier way for you to raise money, which has led to your being in prison here for a relatively long time. I don't know whether you are ever going to change or not, some do, but most don't. It is going to take your decision, once you are released, to decide whether or not you want to stay on the outside, or whether the easy thing is to write a check, but that is all up to you. It is not particularly what the Court is concerned here with—that is something—you are an adult, got to make up your own mind what you want to do in life.

"It is the sentence of the Court in this matter that you serve a minimum of two years and a maximum of five years, said sentence to be consecutive to the sentence being served at the time of your escape, and said sentence to be effective from the date that you were found guilty by a jury.

"You are remanded to the custody of the Warden, Mr. Snow.

"*Mr. Snow:* Yes, sir.

"*The Court:* That is all."

The Judge's statements as to the reformation of defendant refer to an earlier offense, not the offense of escaping from prison for which defendant was being sentenced. There is nothing to indicate a need to protect society insofar as the escape episode is concerned. Why this particular wrongdoer should be disciplined by a two-year minimum is not made apparent. The deterrence of others from committing like offenses, if it was a factor, is not articulated.

Recently decided *People* v *Earegood,* 383 Mich 82, 85 (1970), held that "it is impermissible for a judge in imposing sentence to take into consideration as a factor in determining the term of the sentence the fact that defendant pled or waived a jury at the last minute * * * ."[3]

The affidavit of Snow's attorney showing the disposition of escape cases in the Jackson County Circuit Court over a 26-months' period is not controverted. We consider such sentencing information, not as to the merits of the sentence in each individual case, but solely as establishing that in the usual escape case a minimum sentence of 1–1/2 years has been deemed appropriate by the sentencing judge.

An examination of the record in this case fails to reveal a single fact that would place this defendant

---

[3] See *United States* v *Daniels,* 446 F2d 967 (CA 6, 1971).

in a different category. This is not to say that such facts do not exist or may not be taken into account upon resentencing. Since defendant asserted his innocence and demanded a jury trial, we conclude that departure from the ordinary minimum sentence with the record being silent as to the reasons for such departure, requires vacating the sentence and remanding for resentencing. To this extent, we agree with the majority opinion of the Court of Appeals.

While it is true that trial judges have a statutory responsibility to individualize the sentencing process, we disagree with any finding of the Court of Appeals that purports to determine the sentencing policies of the Jackson County Circuit Court. *People v Snow* is the only case herein reviewed by this Court. To the extent that the Court of Appeals roamed afield from review of this case and purported to review in general the sentencing policies of the Jackson County Circuit Court, it was in error.

As to remand, and the terms thereof, the Court of Appeals is affirmed. Remanded.

T. M. Kavanagh, C. J., and T. G. Kavanagh, Swainson, and Williams, JJ., concurred with Adams, J.

Black, J. (*dissenting*). I agree fully with the comments as well as the reasoning of Judge Holbrook, dissenting below both from the original opinion of Division 2 and from denial of rehearing (26 Mich App 510, 520–523), and therefore vote to reverse.

Turn first to the reliance of Court of Appeals Judges Levin and Bronson upon *North Carolina v Pearce*, 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656

(1969), in particular their quotation of *Pearce* (at 517), namely:

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear."

Did not Judges Levin and Bronson hear this appeal in plain violation of GCR 1963, 811(1), plus an unvarying line of decisions of this Court which attest the critical necessity for such a rule?* Did they, deciding finally November 3, 1970, upon assumed authority of *Pearce,* give any thought to *Pearce's* then immediate offspring, *Moon* v *Maryland,* 398 US 319; 90 S Ct 1730; 26 L Ed 2d 262 (1970), and to the use made by the Supreme Court in that case of the affidavit of sentencing Judge Pugh? Did they stop to consider that 1969 *Pearce* was *not* declared retroactive and that the Supreme Court, although already provided an opportunity in *Moon* to so say, deliberately refrained from declaring effect *nunc pro tunc* of *Pearce* to sentences predating *Pearce;* this one having been adjudged November 15, 1968? Did they deign in any way to provide for the accused Jackson circuit judges any opportunity whatever for the furnishing of their "reasons," within *Pearce's* rule?

Does our majority do so now? There is no pretense of any such opportunity in either of the prevailing opinions I deplore, and no mention therein either of *Moon* or subsequent *Odom* (presently cited).

All we have now is another vote to tighten ever more that hypertechnical noose which encircles and

---

* GCR 1963, 811(1). "Appeals to the Court of Appeals shall be heard on original papers, which papers shall constitute the record on appeal."

progressively strangles law enforcement and influences trial judges to indulge hardened criminals; indulgence which has to be at the personal, physical and monetary expense of those who abide the law and pay the taxes upon which all public officers, judges included, feed semi-monthly.

In *People* v *Payne,* decided only November last (386 Mich 84, 100–106 [1971]), this Court bothered at least to consult the sentencing judge in that analogous case, and gave him the same opportunity by explanatory affidavit as the Supreme Court gave Judges Pugh and McRae in *Moon* and *Odom* v *United States,* 400 US 23; 91 S Ct 112; 27 L Ed 2d 122 (1970). But below and here there has been and now is no such condescension.

The fact is that these Jackson County judges have been charged, tried and judged guilty of a great host of alleged constitutional infractions, all in their absence and without presumptive or other showing of knowledge on their part save only that provided—after the fact—by the publication of the Court of Appeals' advance sheet covering that Court's decisions of November, 1970. As a result of that "trial" they are warned now, from on juristic High, that they henceforth must render their sentences in escape cases uniform lest scores more of new trials be imposed on the Jackson County circuit. That is the one circuit of Michigan where French leave from this country's largest prison is so common that escape informations glut the court, and now today's decision is bound to stimulate a drove of similar-to-Snow applications, the Court having omitted any declaration of prospectivity of Snow.

How indeed was this charge of *Pearce* "vindictiveness" lodged against all of the Jackson County circuit judges? Why simply by a post-appeal and wholly *ex parte* affidavit, prepared and submitted

without pretense of leave of court by a *not exactly* disinterested and wholly uncross-examined affiant, namely the *defendant's own attorney*. Such is the distinctive kind of due process which is now served out, when the people of a state distinguished from a professional felon is the party equally entitled thereto.

These are the days of judicially benevolent toleration of crime, of "permissive" violation of law, and of that kind of judicial action which impelled Kentucky Justice Montgomery, writing recently in the annotated case of *Workman* v *Commonwealth*, 429 SW2d 374, 379; 33 ALR3d 326, 334 (Ky, 1968), to conclude his dissent as I conclude this one:

"At this time the lack of law and order is especially of prime concern. Our courts must bear their share of blame and shame for this condition. [Citing cases.] Decisions such as the majority opinion help to create the situation where it is not safe for women to be alone on the streets or even in their homes. Many surveys will be made and many remedies will be suggested. *The courts should be the first to honor the responsibility for law and order. Until our courts quit coddling criminals, disobedience and disrespect for law and order will continue."* (Emphasis by present writer.)

T. E. BRENNAN, J., concurred with BLACK, J.