*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 2, 2019

v

GERALD MERRELL,

Defendant-Appellant.

No. 339934
Wayne Circuit Court
LC No. 90-007914-01-FC

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

GLEICHER, J., (*dissenting*).

In a quartet of cases commencing with *Roper v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005), and culminating in *Montgomery v Louisiana*, __ US __; 136 S Ct 718; 193 L Ed 2d 599 (2016), the United States Supreme Court has spotlighted two fundamental principles governing the sentencing of juveniles convicted of heinous crimes. First, sentencing judges must recognize that juveniles have "lessened culpability" due to their "lack of maturity," "underdeveloped sense of responsibility," and susceptibility to the negative influences of peers. *Graham v Florida*, 560 US 48, 68; 130 S Ct 2011; 176 L Ed 2d 825 (2010) (quotation marks and citation omitted). Second, juveniles have a "greater capacity for change." *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012) (quotation marks and citation omitted), which means that "irrevocable judgement[s]" about a juvenile offender's potential for rehabilitation cannot be constitutionally tolerated. See *Graham*, 560 US at 74.

How does a sentencing judge put these precepts into practice when the task is *resentencing*, and the offender to be resentenced is a 44-year-old adult who has spent the majority of his life in prison? In accord with this Court's opinion in *People v Wines*, 323 Mich App 343, 352; 916 NW2d 855 (2018), lv pending, the majority holds that the judge must consider "the distinctive attributes of youth" when crafting a proportionate sentence. That concept is unassailable, given the logic of *Miller* and *Montgomery*.

Our Legislature made its own proportionality judgment post-*Miller*. If the United States Supreme Court deemed *Miller* retroactive and a prosecutor did not seek renewal of a life-without-parole sentence, the Legislature decreed that a resentencing court must impose a

sentence for which "the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years." MCL 769.25a(4)(c). Here, the resentencing court (which had not presided over Merrell's 1990 trial) imposed a minimum sentence of 37 years. The court justified this sentence by describing in detail the "brutality" of the murder Merrell committed, and the impact the crime had on the victim's family.

I would hold that the resentencing court abused its discretion by imposing a sentence that failed to take into account the teachings of *Roper*, *Graham*, *Miller*, and *Montgomery*. Although the court gave lip service to Merrell's changed character by noting that he had obtained an education while in prison, maintained employment, and had an excellent behavioral record, the court's sentencing decision was driven solely by its perceived need to avenge the victim's death. In my view, a sentence resting solely on retribution is precisely what *Miller* forbids.

The principles that guide proportional sentencing in our state are: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). *Roper*, *Graham*, *Miller*, and *Montgomery* instruct that the proportionality equation changes when a court sentences a juvenile convicted of murder.

Children are different for several reasons relevant to proportionality. Because a juvenile's character and identity are not well formed, "it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Roper*, 543 US at 570. This means that the penological goal of "discipline" or retribution must be assessed differently when sentencing a child, or resentencing an adult whose crime was committed as a juvenile. "The susceptibility of juveniles to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.' " *Id*. (citation omitted). A child's "vulnerability and comparative lack of control" over a situation "mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment." *Id*.

*Miller*, 567 US at 471 (quotation marks omitted), echoed *Graham*'s central message, highlighting that a juvenile's "diminished culpability and greater prospects for reform" point against "the most severe punishments."

> *Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. Because " '[t]he heart of the retribution rationale' " relates to an offender's blameworthiness, " 'the case for retribution is not as strong with a minor as with an adult.' " [*Miller*, 567 US at 472, quoting *Graham*, 560 US at 71.]

This means that a resentencing court must do more than merely *acknowledge* an offender's youth at the time his crime was committed. *Miller* requires that a court *apply* the core principles that guided that decision.

Here is the resentencing court's entire discussion of Merrell's life, post-crime:

The Court acknowledges that Mr. Merrell has obtained his GED not withstanding arriving to prison with only an 8th grade education.

The Court recognizes that Mr. Merrell has completed the recommended training programs and taken advantage of other educational and job skill courses provided to him through the Michigan Department of Corrections.

The Court acknowledges that he has obtained employment skills and further recognizes that he has maintained employment for a number of years and receives accolades from many of his supervisors.

Again, those are all reflected in Ms. Somerville's presentence report and attachments contained therein. The Court also acknowledges Mr. Merrell's good behavior as demonstrated by the fact that Mr. Merrell has not received any misconduct tickets since on or about December of 1990 and has never received a ticket for violent behavior.

Certainly, um, given [*Miller v Alabama*] a case for retribution is not as strong with a 17[-]year[-]old as it is with an adult.

After reciting these facts, the court immediately moved on to the killing itself.[1] "This was a planned, deliberate, ruthless and brutal murder of Steven Jolly and the decedent's body was dumped like a piece of trash." The court devoted the next five pages of transcript to a discussion of the crime and its impact on the victims.

The crime was indeed brutal; most first-degree murders are horrifying. Tragically, the murder left survivors who have been wracked with grief and anguish for decades. These realities must be factored into a resentencing calculation. But when they assume center stage, as here, they drown out the equally relevant considerations stressed in *Miller* and its predecessors. The resentencing court failed to understand or recognize that Merrell's culpability for the crime was mitigated by his youth. Even as a juvenile, according to the original sentencing report, Merrell expressed "deep sorrow and regret for committing" the crime. The trial evidence supports Merrell's claim that he acted under duress, although that defense was not available to him. See *People v Dittis*, 157 Mich App 38, 41; 403 NW2d 94 (1987) ("The rationale underlying the common law rule is that one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead.").

---

[1] The court neglected to mention that shortly after his arrest, Merrell accepted responsibility for his crime. The court also gave short shrift to record facts supporting that Merrell is a model of transformation and rehabilitation. Prison officials noted in their submissions to the probation department that he has "a good work ethic and is a trustworthy employee," is "skilled in sewing and would easily be hired out in the community by an employer that could take advantage of his craftsmanship," and "has a mellow personality and gets along well with others." Nor did the court consider that Merrell's younger codefendant, who encouraged Merrell to stab the victim, was sentenced to five years of probation.

Although the resentencing court addressed two of the goals of sentencing (reformation and punishment), it said nothing about the "protection of society," and "deterrence." There is not even a hint that Merrell would engage in violent behavior on release, or that further time in prison is required to ensure that he will behave appropriately if given freedom. On this record, neither of those sentencing goals would be served by keeping Merrell imprisoned any longer.[2]

The resentencing court's fixed focus on the circumstances surrounding the crime perverts the proportionality review mandated by Michigan law, *Miller*, and *Montgomery*. Given the Legislature's identification of a minimum sentencing range of 25 to 40 years, I believe a sentence of 37 years is grossly disproportionate. Gerald Merrell's reformation has been profound and extraordinary. A proportionate sentence would place him at the bottom of the range, not the top. Accordingly, I would remand for resentencing guided by the proportionality principles governing resentencing in this state, as modified by *Miller*.

/s/ Elizabeth L. Gleicher

---

[2] It bears noting that the Legislature permits resentencing courts to set a minimum sentence of 25 years for offenders such as Merrell. This number provides objective evidence of a standard, a period of incarceration that in some circumstances fulfils proportionality principles.