*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHARON PATTERSON,

        Defendant-Appellant.

UNPUBLISHED
February 18, 2020

No. 346512
Wayne Circuit Court
LC No. 03-011321-01-FC

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

In 2004, defendant Sharon Patterson was convicted of first-degree, premeditated murder, MCL 750.316(1)(a), as a juvenile and was sentenced to a mandatory life sentence without the possibility of parole.[1] Almost a decade into serving her sentence, the United States Supreme Court decided *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." "In response to *Miller*, our Legislature enacted MCL 769.25 and MCL 769.25a, which address life-without-parole offenses committed by minors and the option of imprisonment for a term of years." *People v Meadows*, 319 Mich App 187, 189; 899 NW2d 806 (2017), citing 2014 PA 22. "MCL 769.25a applie[s] to closed cases for which appeals had been exhausted or were no longer available, but only if the Michigan or United States Supreme Court were to hold in the future that *Miller* was retroactively applicable." *Id*. In *Montgomery v Louisiana*, 577 US ___; 136 S Ct 718, 732; 193 L Ed 2d 599

---

[1] Although this Court denied defendant's delayed application for leave to appeal an order denying her motion for relief from judgment, *People v Patterson*, unpublished order of the Court of Appeals, issued September 20, 2011 (Docket No. 303425), defendant did not otherwise appeal. We note that this Court issued an opinion affirming her codefendant's convictions and sentences in *People v Collier*, unpublished per curiam opinion of the Court of Appeals, issued May 12, 2005 (Docket No. 255125).

(2016), the United States Supreme Court did exactly that, holding that *Miller* was to be applied retroactively.

Based on *Miller*, *Montgomery*, and MCL 769.25a, defendant was scheduled for resentencing. In resentencing briefs, defendant argued in favor of a 25-to-60-year sentence, and the prosecution argued in favor of a 40-to-60-year sentence. See MCL 769.25(9). The resentencing judge ultimately resentenced defendant to a term of 40 to 60 years' imprisonment, the maximum amount of time for a defendant being resentenced in such a situation under Michigan law. Defendant now contends that the trial court did not adequately consider the distinctive attributes of youth, and that, in light of the many factors attributable to defendant's status as a minor at the time of the murder, the resentencing judge should have been more lenient. We disagree.

A trial court's ultimate determination regarding what sentence to impose is reviewed for an abuse of discretion. *People v Garay*, 320 Mich App 29, 43-44; 903 NW2d 883 (2017), overruled in part on other grounds by *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes" or "when it makes an error of law." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

At the resentencing hearing, the resentencing judge, who was assigned to the case in 2017, indicated that she intended to have defendant provide a statement, to have both attorneys argue, and then to announce her decision from the bench in a separate hearing to be scheduled several days later. At that second hearing, the resentencing judge began by indicating that she had reviewed this Court's opinion in *People v Wines*, 323 Mich App 343; 916 NW2d 855 (2018), in which this Court generally held that, when resentencing a defendant who was originally sentenced to life in prison without the possibility of parole as a juvenile, courts should be guided by the objectives set forth in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), which, in turn, necessarily "take into account the attributes of youth, such as those described in *Miller*." *Wines*, 323 Mich App at 352. Thus, the resentencing judge explained, her decision took into account *Wines*, the *Snow* objectives, and the *Miller* factors, suggesting that she considered the "reformation of the offender" and the "protection of society," which necessarily include an analysis of "youth's 'diminished culpability and greater prospects for reform,' " as well as the "punishment of the offender" and the "deterrence of others from committing like offenses," which necessarily include an analysis of "the 'dimish[ed] . . . penological justifications for imposing the harshest sentences on juvenile offenders[.]" *Id*. at 351-352 (citations omitted).

Defendant specifically argues that the resentencing judge placed too much emphasis on the statements contained in defendant's allocution at resentencing rather than on the attributes and characteristics of youth. We note, however, that while *Wines*, 324 Mich App at 352, requires the trial court to "take into account the attributes of youth," it does not require the trial court to consider youthful attributes in a vacuum as a blanket award of leniency. Consistent with our system of individualized sentencing, the trial court's sentence should reflect the entirety of the circumstances surrounding the offense committed and the youthful offender who committed it. *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d327 (2017); *People v Milbourn*, 435 Mich 630, 636;

461 NW2d 1 (1990).[2]  Moreover, we note that a trial court is required to consider updated information at resentencing.  *People v Triplett*, 407 Mich 510, 515-516; 287 NW2d 165 (1980).  See also *Wines*, 323 Mich App at 356 (Consideration of defendant's postsentencing conduct and state of mind is . . . consistent with the rule that at resentencing, a trial court may consider the defendant's conduct since his original sentencing.").  On this record, we cannot conclude that the trial court failed to consider the attributes of youth when sentencing defendant, or abused its discretion by failing to afford them adequate weight.

Rather, the trial court did consider the attributes of youth but found that these attributes were not the basis for the crime and therefore did not warrant leniency during resentencing.  And indeed, when, as here, the offender does not display the typical attributes of youth, the trial court is not required to treat the offense as a product of youth.[3]  More importantly, we agree with the trial court that defendant's failure to express any remorse for her crime at the resentencing hearing indicated that her crime was not a product of any youthful characteristics; rather, the crime was an expression of innate character flaws which transcended defendant's youth.  These considerations were not an abuse of discretion on the part of the trial court, and instead, reflected the court's thoughtful balancing of the circumstances surrounding the offender—both at the time of the offense and in the years since—and the offense.

Affirmed.


/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford

---

[2] It is also noteworthy that, consistent with the trial court's observations, at the time of the offense, our Legislature considered persons of defendant's age—17 years and four months—as adults for purposes of the penal code.  Indeed, even under *Miller* and recent changes to our code, defendant was only some eight months from statutory adulthood.

[3] The trial court noted that defendant was living an adult lifestyle at the time of the offense, and that defendant likely would have "strenuously" argued that she was an adult at the time.  We are not confident that thinking of oneself as an adult is necessarily at odds with the distinct attributes of youth.  However, the trial court also relied on the incredibly brutal and grotesque nature of the crime—defendant was convicted of murdering an elderly woman by striking her multiple times in the back of the head with a claw hammer—to conclude that this crime was not a manifestation of her youth.