*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK ANTHONY ABBATOY,

        Defendant-Appellant.

UNPUBLISHED
January 20, 2026
10:15 AM

No. 372908
Berrien Circuit Court
LC No. 1997-403846-FC

Before: RICK, P.J., and O'BRIEN and MALDONADO, JJ.

O'BRIEN, J. (*dissenting*).

In *People v Boykin*, 510 Mich 171, 189; 987 NW2d 58 (2022), our Supreme Court held that a trial court sentencing a defendant for a crime the defendant committed while a juvenile must "consider the defendant's youth" and "treat it as a mitigating factor." This is not a demanding standard—a court does not even need to place its consideration of the defendant's youth as a mitigating factor on the record. See *id*. at 193-194. But the trial court in this case did. In a lengthy explanation for the sentence imposed, the trial court explicitly considered defendant's youth, identified it as a mitigating factor, and recognized, among other things, how defendant's youth and its attendant circumstances affected defendant's conduct during and immediately after the crime for which he was being sentenced; how, if released, defendant would be less likely to engage in the impulsive behaviors that led to the crime because he had matured since then; and how defendant's age at the time of his offense made him less culpable and thus worthy of a term-of-years sentence. The majority unreasonably concludes that, by placing these considerations on the record, "the court was merely observing defendant's age," which falls "short of creating a record of a substantive, individualized analysis that we can meaningfully review." I respectfully dissent.

Defendant was convicted of murdering the victim in 1997 when he was 17 years old. He was initially sentenced to life in prison without the possibility of parole, but following changes in the law, he was entitled to have that sentence reconsidered. This led to a two-day *Miller*[1] hearing, after which the trial court decided that defendant should not be resentenced to life in prison without

---

[1] *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

parole but should instead receive a term-of-years sentence. At the ensuing resentencing, the court sentenced defendant to 40 to 60 years' imprisonment.

Defendant appealed, and while his appeal was pending, our Supreme Court decided *Boykin*. A panel of this Court then vacated defendant's sentence and remanded for resentencing because the trial court had (unsurprisingly) not complied with *Boykin*. See *People v Abbatoy*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 357766) (*Abbatoy I*), p 2.

On remand, the trial court did not conduct a full resentencing but instead supplemented its earlier ruling, saying that, when it fashioned its prior sentence, the court had considered defendant's youth as a mitigating factor. On appeal, a majority of this Court concluded that the trial court erred in the way it handled defendant's second resentencing, so another resentencing was required. See *People v Abbatoy*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2024 (Docket No. 364852) (*Abbatoy II*).[2] The case was accordingly remanded for the trial court to resentence defendant a third time.

At the third resentencing, the trial court began by emphasizing the difficulty inherent in these juvenile-resentencing cases and discussing the voluminous record it had reviewed in preparation for the resentencing. It then acknowledged that it was to consider the fact "that the defendant was 17 years, 6 months and 7 days old when this violent murder was committed," and said that it would strive to "make it clear" throughout its ruling that it was "applying youth as a mitigating factor." Then, in accordance with the remand order, the court began a full resentencing.

The court summarized the procedural history that brought a defendant convicted in 1997 before the court for resentencing and then, without explicitly stating it, began addressing some of

---

[2] *Abbatoy II* resulted in three separate opinions, none of which garnered a majority. Judges YOUNG and FEENEY agreed that defendant was entitled to resentencing, but neither signed onto the other's opinion. Both judges agreed that the trial court was obligated to fully resentence defendant and that it erred as a matter of law when it supplemented its prior ruling instead of going through a full resentencing. *Abbatoy II*, unpub op at 5 (YOUNG, J.); *Abbatoy II*, unpub op at 2 (FEENEY, J., concurring). And they both agreed that the trial court erred by stating without elaboration that it had considered defendant's youth as a mitigating factor, but their reasons for why differed. See *Abbatoy II*, unpub op at 9 (YOUNG, J.) ("Yes, youth is mitigating and the trial court said as much. But *Boykin* expressly said that youth will factor *into* the *Snow* analysis. It did not for the trial court here. Treating youth as a stand-alone mitigating variable is improper."); *Abbatoy II*, unpub op at 3 (FEENEY, J., concurring) ("I agree that, due to the apparent confusion regarding the effect of the vacated prior sentence, the trial court's cursory statements on January 19, 2023, were insufficient to permit appellate review.").

the *Miller* factors.[3]  The court first discussed the circumstances of defendant's offense[4] and why the court believed that defendant was "solely responsible for striking" the victim to death.[5]  The court then reiterated defendant's age at the time of the killing and noted that defendant was not only young but was struggling with mental-health issues and was on LSD when he killed the victim.

The court next considered defendant's home environment[6] and explained that the record had conflicting evidence on this point.  The court observed evidence that defendant was beaten as a child, including one beating that was so bad that it resulted in defendant needing medical attention.  The court also noted evidence that defendant's family refused to help him address his mental health—defendant's mother "was reluctant" to allow defendant to "be placed on Lithium" despite a recommendation to do so.  On the other hand, the court observed that defendant's mother was "a stay-at-home mom," and that, at defendant's *Miller* hearing, the prosecution submitted an exhibit in which a pastor had "stated the home life was nurturing and balanced."  The court also opined that, even resolving the factual disputes about defendant's upbringing in his favor, defendant's home environment was still less severe than that of some other similarly-situated defendants.

The court then turned to defendant's inconsistent conduct following his commission of the crime and his interactions with the police, explaining that it was attributing this behavior to "incompetencies associated with youth"[7] despite defendant's multiple contacts with the juvenile justice system.[8]  The court described how defendant initially attempted to avoid responsibility for

---

[3] This is what *Boykin* encouraged (but did not require) courts to do when sentencing defendants who committed crimes while juveniles.  See *Boykin*, 510 Mich at 194 n 9.

[4] This is the third *Miller* factor.  See *People v Taylor*, 510 Mich 112, 126; 987 NW2d 132 (2022) (listing the five *Miller* factors).

[5] As recounted by the trial court, defendant initially struck the victim in the head with a shovel three times while the victim was in her garage, after which the victim escaped into her house.  Defendant chased the victim into her house, knocked down two doors, and pulled the corded phone out of the wall after the victim grabbed the phone, presumably to call for help.  Defendant then struck the victim repeatedly with the shovel in an assault that lasted 10 to 15 minutes.  The forensic pathologist at defendant's trial testified that the victim showed signs of defensive wounds.  The victim suffered ten lacerations to her skull, and nine skull fragments were driven into her brain.  The shirt defendant was wearing on the day of the killing was covered in blood, but the clothing that defendant's codefendant was wearing that day did not have any blood on it.  Blood was also found in the passenger seat of the stolen car where defendant was sitting.

[6] This is the second *Miller* factor.  See *Taylor*, 510 Mich at 126.

[7] This is the fourth *Miller* factor.  See *Taylor*, 510 Mich at 126.

[8] The court later went "back through [its] notes to make sure that [it] covered everything" and stated that its reference to defendant's "multiple contacts with law enforcement" was referring to defendant's "more than 20 police contacts" between 1993 and 1997.

his crime by fleeing to Chicago, but then came back to take responsibility for the crime after he found out the victim had died. But defendant also attempted to avoid responsibility for the crime by disposing of the murder weapon and blaming his codefendant for the murder. Then that changed, too, and defendant took responsibility for the crime, though this continued "to shift at various points of time." And the court observed that all of this was much different than defendant and his co-defendant's original plan to steal the victim's car and flee to California.

Then the court, without explicitly stating it, referenced the possibility of rehabilitation.[9] The court explained that, before defendant's *Miller* hearing over which the court presided, the court had received a report in which an agent with the Michigan Department of Corrections recommended that defendant be sentenced to life without parole. The court stated that it disagreed with that report then, and it continued to disagree with that report's recommendation at the time of resentencing, so the court was tasked with determining an appropriate term-of-years sentence for defendant.

The court next turned "to the *Snow*[10] factors," which it said that it would try to consider while also "considering [defendant's] youth." For the first *Snow* factor—which the court described as reformation—the court noted evidence that defendant's mental health had improved since he had had access to "regular competent psychiatric care," but it added the "caveat" that, "at the time of this murder," defendant was not only suffering from untreated mental-health issues but was on LSD. The court also noted that as of May 2021, defendant had "received 49 misconduct tickets while in prison."

For the second *Snow* factor—protection of the community—the court noted that defendant was still suffering from the same mental-health issues that he had been suffering from when the murder took place, but it noted that he was "being properly medicated now," and he had hopefully matured enough to know that he should not abuse illegal drugs. The court reiterated that, at the time of the offense, defendant was young, which partially explained the impetuosity that defendant displayed by experimenting with LSD before the murder, and defendant's "maturity now compared to his age" lowered the risk that defendant would experiment with drugs again.

For the third *Snow* factor—punishing the wrongdoer—the court focused on defendant's conduct underlying his conviction. The court reiterated that there was evidence that the victim had defensive wounds and "that the beating likely lasted between 10 and 15 minutes." It also reiterated its belief that the physical evidence established that defendant delivered the fatal strikes to the victim, and that there simply was no physical evidence to support defendant's argument that his codefendant was responsible for the killing. The court believed that even though defendant was young when he killed the victim, that youth could not explain away the sheer depravity that defendant showed when he killed the victim, so this factor "still inures against defendant."

For the final factor—deterrence of others from committing like offenses—the court explained that this factor was "exceptionally" difficult to consider because "[t]here is nothing more

---

[9] This is the fifth *Miller* factor. See *Taylor*, 510 Mich at 126.

[10] *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

terrible than taking one's life," and that is virtually what all of these juvenile resentencing cases concern. But the court did not thereafter explain how it was considering this factor as it relates to defendant individually.

After placing all of these considerations on the record, the court concluded that an appropriate sentence for defendant was 40 to 60 years' imprisonment.

In light of the court's on-the-record explanation for defendant's sentence, I don't understand how there can be any reasonable dispute that the trial court considered defendant's youth and treated it as a mitigating factor. Besides explicitly saying that it was treating defendant's youth as a mitigating factor, the court showed that it was doing so in its discussion of the *Miller* factors. The court considered how defendant's youth impacted the circumstances of his offense—defendant was young and experimenting with LSD while struggling with mental-health issues when he chased the victim through her house and beat her skull in with a shovel for 10 to 15 minutes. The court attributed defendant's willingness to use illicit drugs to his youthful impetuosity, and later explained that it did not believe that defendant would engage in such activity at the time of resentencing because defendant had matured since he committed the offense for which he was being sentenced. The court also considered how there was evidence that defendant's home environment at the time of his offense—an environment from which defendant could not extricate himself due to his age—did not provide him with the support he needed to address his mental health, and how he was likely beaten. The court also attributed defendant's conduct following the killing—his shifting stances on taking responsibility for the crime and trying to blame others despite his obvious involvement—to defendant's youth. Lastly, the court noted that it had presided over defendant's *Miller* hearing, and it reiterated its finding from that hearing—that, considering defendant's age at the time of his offense and the attendant circumstances of that youth, defendant was not one of those rare irreparably-corrupt juveniles, but could instead be rehabilitated.[11]

---

[11] Having concluded that the trial court properly considered defendant's youth as a mitigating factor, I would reach the next issue that defendant raises on appeal and conclude that the trial court's sentence of 40 to 60 years' imprisonment was eminently reasonable. After considering the various mitigating effects of defendant's youth at the time he committed the offense for which he was being sentenced, the court concluded that the sheer depravity of defendant's offense justified a lengthy prison sentence. Defendant's conduct was undoubtedly egregious—defendant struck the victim with a shovel in her garage, then chased the victim into her house when she ran, caught the victim and pulled the phone off the wall to stop the victim from calling for help, then beat the victim with a shovel for 10 to 15 minutes while she fought for her life until finally leaving the victim on the floor of her home with nine skull fragments driven into her brain. When resentencing defendant, the court described defendant's conduct, accurately and without embellishment, and concluded that defendant's depraved killing of the victim justified a longer sentence. By so doing, the court appropriately applied the principle of proportionality—a defendant "whose conduct is more harmful" should "receive greater punishment." *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). The majority takes no issue with this portion of the trial court's reasoning, so I would encourage the next trial judge tasked with resentencing defendant to carefully consider

The majority refers to the trial court's discussion of the *Miller* factors as the court "simply making factual observations," but not even defendant goes that far. Defendant states on appeal that, when the trial court discussed the incompetencies associated with defendant's youth, the court "***applied*** defendant's youth to the facts of [defendant's] case." (Emphasis in defendant's brief on appeal). Like defendant, I think that the trial court was doing more than "making factual observations" when it discussed the *Miller* factors, contrary to how the majority characterizes that discussion.

I also disagree with the majority's broader claim that, by placing its considerations of defendant's youth as a mitigating factor on the record, the court was "merely observing defendant's age." While the court did once observe defendant's age, it then repeatedly and unambiguously stated that it was treating defendant's *youth* as a mitigating factor.[12] Given its explicit statements to that effect, I would conclude that the trial court treated defendant's youth as a mitigating factor absent some indication that it failed to do so.[13]

The majority does not point to anything suggesting that the trial court here failed to actually treat defendant's youth as a mitigating factor after saying it was doing so. Instead, the majority concludes that "the trial court's repeated bare references to defendant's youth as a mitigating factor fell short of creating a record of a substantive, individualized analysis that we can meaningfully review." But the court did more than make "references to defendant's youth as a mitigating factor"—it provided a lengthy explanation for the sentence it imposed. And it is obvious, at least to me, that this Court can "meaningfully review" that explanation and determine whether the court complied with *Boykin*'s requirements.

As *Boykin* explained, a court resentencing a juvenile defendant under MCL 769.25a need only articulate a justification for the sentence imposed in a manner sufficient to facilitate appellate

---

whether the heinous nature of the crime for which defendant was convicted justifies a lengthy sentence, even after accounting for the mitigating effect of defendant's youth at the time he committed the offense. I believe it is reasonable to conclude—as the trial judge here did—that the mitigating effects of youth do not justify a lower sentence for an individual who chases another person through their home then beats in their skull with a shovel for 10 to 15 minutes. But this is, of course, something that the next trial judge will have to decide.

[12] The "merely observing defendant's age" language is from *Abbatoy I*, and the majority claims that this case is similar to that one. I disagree. The sentencing court here, for the most part, referred not to defendant's age but to his youth, and it correctly recognized that defendant's youth was a mitigating factor. In contrast, the only possible reference that the trial court made to defendant's youth in *Abbatoy I* was when it said, "[I]f your mother had had you 22 weeks before she did[,] we would [not] be here today. You would have been 18 years of age and you wouldn't have had the right to a *Miller* hearing." *Abbatoy I*, unpub op at 4. *That* is what "merely observing defendant's age" looks like, and it is clearly not what the trial court did here.

[13] This approach gives due respect to sentencing courts while recognizing that those courts are not infallible, so it is possible for a sentencing court to not treat youth as a mitigating factor even if it says it is doing so.

review. *Boykin*, 510 Mich at 194. See also *People v Copeland*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925); slip op at 9. When resentencing defendant, the trial court here provided an explanation for the sentence imposed that spanned over 10 pages of transcript, during which the court considered the *Miller* and *Snow* factors and applied those factors to the unique facts and circumstances of defendant's case. As part of its analysis, the court repeatedly recognized defendant's youth at the time of the offense for which he was being sentenced; explicitly stated that it was treating defendant's youth as a mitigating factor; and explained (or at the very least attempted to explain) how it was treating defendant's youth as a mitigating factor. The trial court's lengthy on-the-record explanation for the sentence it imposed is plainly sufficient to facilitate appellate review. Indeed, by discussing defendant's youth as a mitigating factor and expressly applying the *Miller* and *Snow* factors to the facts of circumstances of defendant's case, the trial court here did everything that our Supreme Court in *Boykin* suggested courts sentencing juvenile defendants do in order to facilitate appellate review. See *Boykin*, 510 Mich at 192-193.

The majority's conclusion that it cannot "meaningfully review" the trial court's on-the-record explanation is rooted not in *Boykin* but in the majority's belief that the trial court needed to sufficiently explain on the record *how* it treated defendant's youth as a mitigating factor. The majority says as much when it criticizes the trial court for "simply making factual observations, *without explaining how* youth meaningfully affected those considerations." (Emphasis added).[14] But *Boykin* plainly disavowed any such articulation requirement. See *Boykin*, 510 Mich at 190 ("Therefore, we hold that trial courts need not articulate their bases for considering an offender's youth during sentencing hearings conducted under MCL 769.25 and MCL 769.25a in which the offender is sentenced to a term of years.").[15]

Briefly, I also disagree with the majority's decision to remand this case to a different judge. According to the majority, this case must be remanded to a different trial judge because the current trial judge has resentenced defendant three times, and each time, the judge "neglected to properly consider the *Snow* factors through the mitigating lens of youth and its attendant circumstances." Assuming for the sake of argument that the majority's characterization of defendant's previous

---

[14] The majority makes similar criticisms elsewhere in its opinion, saying that "it is unclear how the trial court considered defendant's youth to mitigate [the second] *Snow* factor," and that "we cannot ascertain whether and how youth was incorporated into [the trial court's] analysis [of the fourth *Snow* factor]."

[15] My disagreements with the majority's reasoning aside, the majority opinion is simply not helpful to any court faced with sentencing a juvenile defendant, let alone the next judge who has to resentence this defendant, because the majority never explains what the trial court in this case should have done differently or what the next trial judge tasked with resentencing defendant should do to "properly" resentence him. As Judge BOONSTRA observed the last time this case was on appeal, "this Court should not stand as a sort of tight-lipped gatekeeper that will repeatedly reject trial courts' attempts to comply with its edicts without ever explaining what is required for passage through the gates." *Abbatoy II*, unpub op at 4 (BOONSTRA, J., *dissenting*).

resentencings is correct,[16] I do not understand why the remedy for this failure is remand to a different judge. To remedy the problem identified by the majority, the trial judge simply needs to "consider the *Snow* factors through the mitigating lens of youth and its attendant circumstances," which is something that this trial judge is clearly capable of doing. Indeed, the current trial judge affirmatively demonstrated that he is capable of considering defendant's youth as a mitigating factor when he held that defendant was entitled to a term-of-years sentence following defendant's *Miller* hearing.[17]

For these reasons, I respectfully dissent.

/s/ Colleen A. O'Brien

---

[16] For clarity, I do not think the majority is correct to assert that the trial judge here ever "neglected to properly consider" defendant's youth when analyzing the *Snow* factors. Defendant's first resentencing occurred before *Boykin* required the trial judge to consider defendant's youth as a mitigating factor, so it is hardly accurate to say that the judge "neglected" to do so. And only one member of this Court in defendant's last appeal concluded that the trial judge failed to properly consider defendant's youth when analyzing the *Snow* factors. See *Abbatoy II*, unpub op at 9 (YOUNG, J.).

[17] The majority also opines that "it would be unreasonable to expect the trial judge to set aside his previously expressed views without substantial difficulty," but the majority never identifies what those views are. All the majority says before this is that, in the past, the trial judge "neglected to properly consider the *Snow* factors through the mitigating lens of youth and its attendant circumstances." But, surely, the majority does not think that *that* is a "view" that the judge holds. It is therefore not clear what "previously-expressed views" the majority believes the current trial judge would have difficulty setting aside.