*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK ANTHONY ABBATOY,

        Defendant-Appellant.

UNPUBLISHED
January 20, 2026
10:15 AM

No. 372908
Berrien Circuit Court
LC No. 1997-403846-FC

Before: RICK, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

This case has returned to this Court for the third time following a remand for resentencing. Defendant, Mark Anthony Abbatoy, now appeals by right the trial court's October 4, 2024 order resentencing him to 40 to 60 years' imprisonment. In October 1997, a jury convicted defendant—who was 17 years old at the time—of first-degree felony murder, MCL 750.316(1)(b). The same trial court judge presided over all three sentencing proceedings. On appeal, defendant argues that this Court should remand for another resentencing and should reassign that resentencing to a different trial judge. We agree.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case stems from the May 7, 1997 beating death of a woman by her son, Anthony DePalma, and defendant, who were both 17 years old at the time. The teenagers planned to steal DePalma's mother's car and run away to California. Fearing that she would call police, they decided to knock her unconscious with a shovel before taking her car. When they found her in the garage, defendant struck her on the head three times, knocking her out. After the victim regained consciousness and went inside her house, defendant followed her, tore the phone from the wall as she tried to call for help, and struck her repeatedly until she fell. Defendant claimed that she was still breathing when he left her upstairs and that DePalma was the one who killed her. The victim died from severe head trauma, with multiple skull-penetrating injuries. Both defendant and DePalma were convicted of first-degree felony murder and sentenced to life imprisonment without parole.

However, in 2016, after the United States Supreme Court's decisions in *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US 190, 208-209, 136 S Ct 718; 193 L Ed 2d 599 (2016)—which required states to revisit mandatory life-without-parole sentences imposed on juveniles—the prosecution moved to resentence the defendant to life without parole. After a two-day *Miller* hearing, the trial court denied the motion and resentenced Abbatoy to 40 to 60 years in prison. This Court subsequently vacated Abbatoy's sentence and remanded for another resentencing because the trial court failed to consider Abbatoy's youth as a mitigating factor, as required by *People v Boykin*, 510 Mich 171; 987 NW2d 58 (2022). *People v Abbatoy* ("*Abbatoy I*"), unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 357766), p 2.

On remand, the trial court largely relied on its initial resentencing analysis from 2021 and imposed the same term of imprisonment of 40 to 60 years. Once again, this Court vacated the sentence, stating that "the trial court was required to begin anew in making findings consistent with the instructions set forth in the Court of Appeals' 2022 opinion," but "it did not." *People v Abbatoy* ("*Abbatoy II*"), unpublished per curiam opinion of the Court of Appeals, issued July 25, 2024 (Docket No. 364852), p 8. This Court clarified that a trial court must consider the factors in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972) in light of a defendant's youth. *Id.*[1] However, the record indicated the trial court instead treated youth as a stand-alone factor that did not impact any *Snow* factor at sentencing. *Id.* In its second remand order, this Court expressly directed the trial court to correctly apply the controlling legal standards, particularly those governing youth-related mitigating factors, when re-evaluating defendant's sentence. *Abbatoy II*, unpub op at 10.

The trial court then concluded that it had considered youthfulness in the application of each of the *Snow* factors and then re-imposed defendant's 40 to 60 year resentence. Defendant now appeals.

## II. STANDARD OF REVIEW

We review for an abuse of discretion the trial court's sentencing of defendant to 40 to 60 years in prison. See *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). Such a review requires an examination whether the trial court abused its discretion by "violating the principle of proportionality." *Id.* at 477. We also review a sentence for reasonableness without regard to whether the trial court sentenced a defendant within the guidelines; whether a sentence is reasonable depends on whether it is disproportionate to the "seriousness of the circumstances surrounding the offense and offender." *People v Posey*, 512 Mich 317, 325; 1 NW3d 101 (2023). Under this standard, a trial court may not render any decision that falls outside the range of reasonable and principled outcomes. *People v Odom*, 327 Mich App 297, 303; 933 NW2d 719 (2019).

---

[1] The *Snow* factors consist of the following: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." *Snow*, 386 Mich at 592.

### III. YOUTH AS A MITIGATING FACTOR

Defendant argues that the trial court again failed to properly consider his youth at the time of the offense as a mitigating factor. We agree.

After a careful review of the record on the second remand, we are not persuaded that the trial court appropriately addressed defendant's youth through the lens of the *Snow* factors and treated defendant's youth as a mitigating factor, pursuant to *Boykin*, 510 Mich at 188-189. The trial court acknowledged that defendant appeared "for resentencing for the Court to provide additional clarification . . . that age was considered as a mitigating factor and to apply *Boykin* and *Snow*." However, as we noted in *Abbatoy I*, awareness of youth is not "obviously" the same as treating youth as a mitigating factor in sentencing proceedings. *Abbatoy I*, unpub op at 4.

Before turning to the *Snow* factors, the trial court summarized the details of defendant's crime, as well as "some of the factors . . . that both counsel[s] covered." To that end, the trial court noted without elaborating that defendant's youth was "clearly a mitigating circumstance." The trial court further noted that "[b]oth counsel[s] spoke of mental health issues, which the defendant . . . had," and the court noted that defendant used lysergic acid diethylamide (LSD) on the day of his crime. The trial court also summarized its reflections on defendant's home life, which had been characterized as "nurturing and balanced," although the record also supported that defendant suffered at least one severe beating. Along the same lines, the trial court acknowledged that it was recommended at one point that the defendant be placed on Lithium, but his mother was "reluctant" and "wouldn't allow that to happen."

Then the trial court explained how defendant took varying amounts of responsibility for his crime at different times; defendant had multiple contacts with the criminal justice system as a juvenile, reflecting the "incompetencies associated with youth;" and the Michigan Department of Corrections (MDOC) recommended that defendant be sentenced to life without parole. Up to this point, the trial court was simply making factual observations, without explaining how youth meaningfully affected those considerations.

Turning to the first *Snow* factor, rehabilitation, the trial court found that defendant's mental health had improved since the time of the offense because of consistent psychiatric treatment. However, the trial court found defendant's use of LSD on the day of the offense troubling. The court noted defendant's extensive history of prison misconduct, totaling 49 infractions. The court also referred to the recommendation of the MDOC—as well as the recommendation of a licensed psychologist—that defendant be sentenced to life without parole. The trial court then reaffirmed its prior determination that the rehabilitation factor required a term-of-years sentence, instead of a life sentence. We cannot determine from the trial court's recitations that youth was meaningfully incorporated into its analysis of the first *Snow* factor.

As to the protection of the community factor, the trial court compared defendant's age at the time of the offense—17 years and 6 months—to defendant's age at the time of the resentencing—nearly 45 years. The trial court then noted that defendant's mental health issues continued but that he was being properly medicated now. The trial court also opined that it would be "troubling" if defendant were to abuse illegal drugs again, the way he did at the time of the murder. But the court offered a sense of hope that defendant's increased maturity should lessen

that risk of drug use. As with the previous factor, it is unclear how the trial court considered defendant's youth to mitigate this particular *Snow* factor.

With respect to the punishment factor, the trial court recounted the details of the crime and defendant's culpability, including the presence of defensive wounds on the victim, that the beating persisted for approximately 10 to 15 minutes, and that physical evidence—including defendant's blood-covered shirt, the lack of blood on his codefendant's clothing, and blood found on the passenger side of the stolen vehicle—supported the jury's conclusion that it was defendant who committed the killing. The trial court further stated that, although it considered the defendant's youth in accordance with *Miller* and the *Snow* factors, it nevertheless found "the punishment component still inures against the defendant." Thus, the trial court stated that it considered defendant's youth, but did not indicate that it considered youth to be any sort of mitigation.

Turning to the deterrence factor, the trial court noted defendant's extensive juvenile criminal history and repeated involvement with law enforcement before the offense. The trial court highlighted more than 20 law-enforcement contacts between 1993 and 1997, including "multiple runaways, multiple family disputes, home invasion, receiving and concealing stolen property," as well as "drive-away[s] of a motor vehicle," in addition to the theft of three additional vehicles between 1994 and 1995, and even an escape from juvenile custody. The trial court relied on this history to conclude that deterrence remained a significant sentencing consideration. Again, we cannot ascertain whether and how youth was incorporated into this analysis.

Consistent with this Court's prior observation in *Abbatoy I*, similarly here, during the third resentencing, "it appears that the court was merely observing defendant's age, not taking defendant's youth and its attendant circumstances into consideration for purposes of sentencing defendant," *Abbatoy I*, unpub op at 4-5. Therefore, although "there are no magic words or phrases that a trial court must use to show that it adequately considered the mitigating qualities of youth within Snow's sentencing criteria," *People v Copeland*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925), slip op at 4, we conclude that the trial court's repeated bare references to defendant's youth as a mitigating factor fell short of creating a record of a substantive, individualized analysis that we can meaningfully review.

## IV. SENTENCE PROPORTIONALITY

Because we conclude that the sentence must be vacated and the matter remanded for resentencing, we decline to address the remaining sentencing factors.

## V. RESENTENCING BEFORE A DIFFERENT JUDGE

Defendant argues that he is entitled to resentencing before a different trial judge. We agree.

To determine whether remand to a new judge is appropriate, this Court examines the following factors:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3)

-4-

whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.  [*People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019)].

Applying the *Walker* factors, reassignment is warranted.  This case has been remanded twice, resulting in three sentencing hearings before the same judge.  In each instance, the trial court neglected to properly consider the *Snow* factors through the mitigating lens of youth and its attendant circumstances.  Given this procedural history, it would be unreasonable to expect the trial judge to set aside his previously expressed views without substantial difficulty.  See *Walker*, 504 Mich 267 at 286.

Finally, a judicial reassignment in this case would not result in undue waste or duplication.  The record has been fully developed through the initial *Miller* hearing and prior resentencing, enabling a new judge to proceed efficiently and without extensive additional proceedings.  Whatever limited administrative burden may accompany reassignment is outweighed by the imperative to restore confidence in the sentencing process.

Defendant's sentence is vacated, and this matter is remanded for resentencing before a different judge.  We do not retain jurisdiction.


/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado