*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 18, 2023

Plaintiff-Appellee,

v

No. 361229
Oakland Circuit Court
LC No. 1999-166201-FC

AKIL L. LOGAN,

Defendant-Appellant.

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

In 2000, a jury convicted Akil L. Logan of first-degree felony murder, armed robbery, conspiracy to commit armed robbery, and three counts of possession of a firearm during the commission of a felony for offenses he committed when he was 16 years old. The trial court sentenced Logan as an adult to a mandatory term of life imprisonment without the possibility of parole (LWOP) for his felony-murder conviction. Following *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the trial court resentenced Logan to 35 to 60 years' imprisonment. The trial court properly considered factors outlined in *Miller* before imposing a sentence within the statutory guidelines range and considered Logan's youth as a mitigating factor at sentencing. We affirm.

## I. BACKGROUND

Logan's convictions arise from the 1995 murder of Jason Guzik. Logan and three friends, all members of the "Pinewood Posse," followed Guzik to a parking lot with a plan to steal his car. When Guzik parked, Logan got into the passenger seat and shot Guzik in the head with a .22 caliber pistol at close range. The group drove the vehicle for several days with Guzik's body still inside. They eventually hid Guzik's body under garbage bags in an alley and abandoned the vehicle.

A jury convicted Logan of felony murder. The court sentenced Logan as an adult to a mandatory term of LWOP for the murder conviction. This Court affirmed Logan's convictions and sentences in *People v Logan*, unpublished per curiam opinion of the Court of Appeals, issued February 1, 2002 (Docket No. 226951).

-1-

"In 2012, the United States Supreme Court decided *Miller*, which held that sentencing individuals to mandatory [LWOP] for crimes they committed before the age of 18 violated the Eighth Amendment's ban on cruel and unusual punishments." *People v Boykin*, 510 Mich 171, 179; 987 NW2d 58 (2022), citing *Miller*, 567 US at 489. In *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016), the Supreme Court ruled that *Miller* has retroactive effect. "The Michigan Legislature accounted for these changes by enacting a sentencing scheme that eliminated mandatory [LWOP] for all individuals who were convicted of specific crimes, including first-degree murder, for acts committed while they were juveniles." *Boykin*, 510 Mich at 179-180, citing MCL 769.25; MCL 769.25a.

Because Logan was 16 years old at the time of the murder and had been sentenced to mandatory LWOP, resentencing was required. Logan contended that in imposing a new sentence, the trial court was required to consider the sentencing objectives laid out in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972): "rehabilitation, punishment, protection of society, and deterrence of others." Logan argued that "[t]he sentencing court must use the *Miller* factors" for accounting for the mitigating characteristics of youth in determining if a juvenile should be sentenced to LWOP "as its lens for balancing the *Snow* objectives." Logan characterized his childhood as lacking in consistent adult supervision and cited developmental neuroscience regarding brain maturation. He further contended that his excellent prison record and current psychological evaluation illustrated that he had taken ownership of his actions, gained control over his impulses, and could recognize his shortcomings. Logan requested a new minimum sentence of 30 years.

The prosecution responded by detailing Logan's early history of assaultive offenses and argued that Logan's predominantly positive prison record was not necessarily indicative of rehabilitation. The prosecution conceded that Logan's recent psychological evaluation established that he did not fall into the category of juvenile offenders who are irreparably corrupt. As a result, the prosecution admitted that resentencing Logan to LWOP was not appropriate. Instead, the prosecution pursued a sentence of 40 to 60 years' imprisonment, emphasizing that Logan was the leader in this group and murdered a random victim.

Before undertaking its factual analysis, the trial court noted that it was required by *People v Skinner*, 502 Mich 89; 917 NW2d 292 (2018), and MCL 769.25(6) to consider various factors outlined in *Miller* before imposing a new sentence.

> Those factors are: One, his chronological age and its hallmark features, among them immaturity, impetuosity, and failure to appreciate risk and consequences. Two, the family and home environment that surrounds him and from which he cannot easily extricate himself, no matter how brutal or dysfunctional. Three, the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Four, whether he might have been charged with or convicted of a lesser offense, if not for the incompetencies associated with youth; for example, his inability to deal with police officers or prosecutors, including a plea agreement or his incapacity to assist his own lawyers. And five, the possibility of rehabilitation.

In addition, the court noted that MCL 769.25(7) required it "to specify on the record the aggravating and mitigating circumstances considered by the Court and the Court's reasons supporting the sentence imposed."

The trial court then placed on the record its consideration of the *Miller* factors, noting that its analysis was based on clear and convincing evidence:

> [Logan's] chronological age and its hallmark features, among them immaturity, impetuosity and failure to appreciate risk and consequences. [Logan] was nearly 17 years of age. He was 16 and several months. He was obviously extremely immature, was probably the embodiment of impetuosity and did not appreciate the risk and consequences of what he was doing.
>
> His chronological age itself is not much of a mitigating factor in light of the actual age. But regard [sic] to the hallmark feature, the failure to appreciate risk and consequences, as I mentioned, he seemed totally oblivious to what he was doing in the sense of how he was driving around in this car, how he wasn't very concerned about the disposal of the body, that he really was concerned about a dance and things like this.
>
> On the other hand, . . . he also obviously lacked self-control and was impulsive and blind to many of the restraints of civility in civilization. So those parts, which in other contexts are not mitigating facts but aggravating factors in this context is a mitigating factor, his ability to appreciate the gravity of the situation.
>
> Second, the family and home environment that surrounds him, from which he cannot usually extricate himself, no matter how brutal or dysfunctional. There was instability in his family life. His mother was a harsh disciplinarian . . . when he was a younger person and became very lackadaisical as an older person. His father was not in his life very often, and this factor does result in a finding that he had a dysfunctional home environment; that he could not easily extricate himself, although I will say that he decided to join a gang or the Pinewood Boys or whatever that group was called, and he made a conscious choice to do that. And so he left a - - or avoided a somewhat dysfunctional family environment to go forward with a group of juveniles. And so I think this really cuts both ways, and I'll leave it at that.
>
> Three, the circumstances of the homicide offense, including the extent of his participation in the conduct and the way that familial and peer pressures may have affected him. There was no family pressure. He was the leader of the gang in connection with this particular terrible incident. He ruthlessly in cold blood executed the victim. He pulled the trigger. He got in the car. The whole reason they were there was so that he could steal the car. All this is aggravating circumstances. There is absolutely no mitigation there in connection with this factor.

. . . [N]umber four, whether he might have been charged with and convicted of a lesser offense, if not for the impotencies associated with youth, for example, his inability to deal with police officers or prosecutors, not including a plea agreement or his incapacity to assist his own lawyers, the report from Dr. Holden on it. I think the memos also reflected that this also is not a factor that mitigates.

He . . . committed first degree murder. He was uncooperative. He was familiar with the criminal justice system in some sense because of his prior involvement. He initially denied any involvement. He was well-defended as far as we can tell. He didn't seem to have any capacity [sic] to assist his own lawyers, so this is not mitigating at all. The factor provides no mitigation.

Number five, the possibility of rehabilitation. . . . [A]s noted by the People, he was not an angel when he first committed this offense. He was with a gang. He had a number of misconducts. Defense counsel is right that there is simply one class 1 misconduct, and that was over 20 years ago. There [are] 13 other class 2 [mis]conducts. The last ticket was six and a half years ago. He is in level 2 security. He does have an exceptional work history. He is engaged in a number of programs. He has availed himself [of] a good number of possibilities for rehabilitation in connection with the Michigan Department of Corrections. He has made significant overall rehabilitative progress, and this factor heavily weighs in favor of mitigation.

The trial court indicated that it also considered "the cruelty a resentencing has on victims and their families," as well has the reopening of old trauma. Regarding Guzik's mother, the court noted:

She is obviously still very angry, and she mentions that the very reality this killer will not serve out his original sentence breaks her heart; that he's receive[d] a second chance at life is infuriating. There is no justice here.

I will leave that to higher authorities. This Court is bound by the United States Supreme Court's decision, the Michigan [L]egislature's framework, and the Michigan Supreme Court, and so I understand the People's decision not to pursue [LWOP].

The court cited the statutory guidelines range of 25 to 40 years and concluded that a sentence of 35 to 60 years' imprisonment for the felony-murder conviction was "in the best interest of justice."

## II. LEGAL PRINCIPLES

We review for an abuse of discretion a trial court's sentencing decision, including a juvenile offender's resentencing after *Miller*. *Boykin*, 510 Mich at 183; *Skinner*, 502 Mich at 131-132. "A given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

In *Miller*, 567 US at 465, the United States Supreme Court held "that mandatory [LWOP] for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " "Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 476. *Miller* described this wealth of characteristics and attendant circumstances as including "diminished capacity" marked by "a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking." *Id.* at 471 (quotation marks and citations omitted). Juveniles are more vulnerable to peer and family pressures and are also vulnerable because they have little to no control over their surroundings. However, juveniles also have "greater prospects for reform" as their brains are not yet fully developed and their characters are not yet set in stone. *Id.* at 471-472.

As noted, before imposing a life sentence on a juvenile offender, the *Miller* Court held that sentencing courts must consider several factors: (1) the juvenile's "chronological age and its hallmark features—among them immaturity, impetuosity, and failure to appreciate risks and consequences;" (2) "the family and home environment that surrounds" the juvenile, from which the juvenile "cannot usually extricate himself—no matter how brutal or dysfunctional" that environment may be; (3) "the circumstances of the homicide offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected [the juvenile];" (4) whether the juvenile "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth," such as the "inability to deal with police officers or prosecutors" or an "incapacity to assist his own attorneys;" and (5) the "possibility of rehabilitation." *Id.* at 477-478. The *Miller* Court reasoned it would be a rare juvenile offender whose crime would "reflect irreparable corruption" as opposed to "unfortunate yet transient immaturity," and thus "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at 479-480.

In response to *Miller*'s pronouncement, the Michigan Legislature enacted MCL 769.25 and MCL 769.25a. MCL 769.25(2)(d) permits a prosecutor to seek an LWOP sentence for an offender who was under the age of 18 when he or she committed murder. However, there are conditions. MCL 769.25 states:

> (6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in *Miller v Alabama*, 567 US [at 460], and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

> (7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

Logan was subject to resentencing under MCL 769.25a, which the Legislature enacted to retroactively apply *Miller* to those previously sentenced to mandatory LWOP as juveniles. MCL

769.25a.[1] Because the prosecution ultimately did not seek an LWOP sentence, MCL 769.25a(4)(c) required the court to "sentence the individual to a term of imprisonment for which the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years."

In *People v Wines*, 323 Mich app 343, 350; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020), this Court lamented, "The range of potential minimum terms under MCL 769.25a is very substantial—from 25 years to 40 years. There are no sentencing guidelines to guide a trial court's exercise of discretion within that very substantial range." This Court held, that "when sentencing a minor convicted of first-degree murder, when the sentence of [LWOP] is not at issue, the court should be guided by a balancing of the *Snow* objectives and in that context is required to take into account the attributes of youth, such as those described in *Miller*." *Wines*, 323 Mich App at 352. The *Wines* Court summarized that the *Snow* factors include a balancing of "the following objectives: (1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses." *Wines*, 323 Mich App at 351, citing *Snow*, 386 Mich at 592. This Court held that "a failure to consider the distinctive attributes of youth, such as those discussed in *Miller*, when sentencing a minor to a term of years pursuant to MCL 769.25a so undermines a sentencing judge's exercise of his or her discretion as to constitute reversible error." *Wines*, 323 Mich App at 352.

The Michigan Supreme Court subsequently considered the analysis a court must undertake before imposing a term-of-years sentence for a juvenile offender under MCL 769.25a in *Boykin*. In *Boykin*, 510 Mich at 183, the Court noted, "Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range. Within that range, the sentence should be tailored to the particular circumstances of the case and offender." Courts must "exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality." *Id*. To that end "[a]n appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Id*. This list is nonexhaustive, and not all these factors will be relevant in any given case. *Id*.

The Supreme Court agreed with this Court's determination in *Wines* that a court sentencing a juvenile to a term of years under MCL 769.25a must consider the sentencing objectives enumerated in *Snow*: "(1) reformation of the offender; (2) protection of society; (3) disciplining of the wrongdoer; and (4) deterrence of others from committing like offenses." *Boykin*, 510 Mich at 188 (quotation marks and citation omitted). The Supreme Court held, "Youth affects these considerations." *Id*.

> For example, since a greater possibility exists that a minor's character deficiencies will be reformed, the mitigating qualities of youth necessarily transform the analysis of the first *Snow* criterion. Without considering the mitigating factors of youth, then, a sentence cannot adequately address the reformation of the offender. Next, because youth have a heightened capacity for change relative to adults, the

---

[1] This Court found unconstitutional MCL 769.25a(6)'s proscription against applying good-time and disciplinary credits when resentencing these juvenile offenders. *People v Wiley*, 324 Mich App 130; 919 NW2d 802 (2018).

needs for protecting society should be given individualized consideration, which necessarily considers the way youth affects the defendant's ability to change. [See *Jones v Mississippi*, 593 US___, ___ n 7; 141 S Ct 1307, 1337 n 7; 209 L Ed 2d 390 (2021)] (Sotomayor, J., dissenting) (explaining that "[t]he Eighth Amendment requires that sentencers (and reviewing courts) not presume that most juveniles will forever remain the 'murderers' they once were") (citation and comma omitted). In addition, because it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character, *Snow*'s focus on discipline of the wrongdoer must be viewed differently under the lens of youth. Nor can deterrence do the work in this context, because the same characteristics that render juveniles less culpable than adults make them less likely to consider potential punishment. Given that youth is a mitigating factor, it will inevitably factor into *Snow*'s four considerations. [*Boykin*, 510 Mich at 188-189 (cleaned up).]

Accordingly, the Court held, "[I]n all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor." *Boykin*, 510 Mich at 189.

Although a court must consider a juvenile's youth when imposing a term-of-years sentence, the Supreme Court was less clear about how that consideration should be applied. Specifically, the Court found no mandate under the statutes, caselaw, or Michigan or United States Constitution to "articulate their bases for considering an offender's youth during sentencing hearings conducted under MCL 769.25 and MCL 769.25a in which the offender is sentenced to a term of years." *Boykin*, 510 Mich at 189. In relation to our caselaw, the Supreme Court noted, "Youth matters in sentencing decisions involving juvenile offenders, and the trial court is responsible for tailoring a sentence to an individual defendant and for giving reasons for imposing each sentence in order to facilitate appellate review." *Id*. at 192.

[N]one of this Court's sentencing jurisprudence requires trial courts to fulfill these responsibilities by articulating *specific* factors on the record. Instead, our sentences must follow the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. Sentencing courts must justify the sentence imposed in order to facilitate appellate review. But never before have we imposed a requirement that a sentencing court give a detailed on-the-record explanation of one or more specific factors, and we do not impose such a requirement here. [*Id*. (cleaned up).]

Ultimately, *Boykin*, 510 Mich at 193-194, states:

Trial courts must consider youth as a mitigating factor in hearings conducted under MCL 769.25 or MCL 769.25a even when the defendant is sentenced to a term of years; however, this consideration need not be articulated on the record. In other words, there is no authority that imposes a higher standard of articulation regarding youth beyond our general requirement that a trial court must adequately explain its

-7-

sentence on the record in order to facilitate appellate review. [Quotation marks and citations omitted.]

## III. ANALYSIS

The trial court more than adequately supported Logan's felony-murder sentence. The court identified and analyzed each *Miller* factor in turn. Although the court did not specifically list the objectives of *Snow*, the court's on-the-record analysis covered those factors as well. And the court considered the hallmarks of Logan's youth as a mitigating factor.

Logan contends that the court paid lip service to his youth as a mitigating factor because the court stated that Logan was almost 17 and not truly very young. Logan places too much emphasis on this very brief statement. The court specifically found that Logan "was obviously extremely immature, was probably the embodiment of impetuosity and did not appreciate the risk and consequences of what he was doing." The court further stated that Logan "seemed totally oblivious to what he was doing in what he was doing in the sense of how he was driving around this car, how he wasn't very concerned about the disposal of the body, that he really was concerned about a dance and other things like this." Moreover, Logan "obviously lacked self-control and was impulsive and blind to many of the restraints of civility in civilization." The court opined that with regard to an adult offender, these characteristics would be aggravating factors. In relation to a juvenile, however, these characteristics were mitigating; they were evidence of a of a "lack of ability to appreciate the gravity of the situation." The volume of analysis alone contradicts Logan's contention that the court gave inadequate mitigating weight to the characteristics of youth in imposing sentence.

Logan also takes umbrage with the court's assessment that "he made a conscious choice" to join a gang as a teenager. Again, Logan takes this statement out of context. The court discussed the dysfunctionality of Logan's homelife and stated that Logan "avoided" that environment by joining a gang. The court indicated that this "choice" "really cuts both ways." However, the court acknowledged that Logan's decisions at that point in his life were driven by his need to escape his home environment.

Logan suggests that the court placed too much emphasis on the circumstances of the underlying offense. It is important to note that in *Wines*, this Court specifically found reversible error in the imposition of the maximum sentence under MCL 769.25a when, "the court's reasoning was based overwhelmingly on the seriousness of the crime and the state's interest in imposing punishment." *Wines*, 323 Mich App at 355. However, the court in this case did not impose the highest minimum sentence allowed under the statute; it imposed a minimum sentence of 35 years. The court selected a sentence toward the center of the permissible range despite the particularly heinous details of the offense and Logan's primary role in the murder. The trial court clearly explained why mitigation was not available on this factor, but balanced this consideration with the other factors and circumstances identified.

Finally, Logan complains that the trial court did not adequately explain why a 35-year minimum sentence was proportionate given this particular offender and offense. Again, "[w]hen making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence

imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). The court's analysis of the *Miller* factors and their application under the circumstances of this case justified the court's determination that a 40-year minimum sentence was not justified, but that a minimum sentence within the middle-to-high end of the range was. The court discussed Logan's rehabilitative efforts and successes at length, while acknowledging the seriousness of the offense. Overall, the sentencing court conducted the required analysis, found that Logan's youth was a factor mitigating against the highest permissible sentence, and fashioned a proportionate sentence. Nothing further was required.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado