*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TJ JAMES TREMBLE,

Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No. 360401
Arenac Circuit Court
LC No. 97-002455-FC

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant, TJ James Tremble, was sentenced to serve life without the possibility of parole in 1997 for his convictions on two counts of felony-murder as well as other crimes stemming from the killing of an elderly couple while they were asleep in their home. At the time of those killings, defendant was just 14 years old. Defendant was resentenced after the United States Supreme Court issued its opinions in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016). At his resentencing hearing, defendant received concurrent sentences of 40 to 60 years' imprisonment for the felony-murder convictions. In this appeal of right, defendant contests those sentences, asserting that they are disproportionate and that the trial court incorrectly thought that the killings were premeditated. Because we find defendant's arguments unpersuasive, we shall affirm the sentences that the trial court imposed.

## I. FACTUAL BACKGROUND

In 1997, a jury convicted defendant of two counts of felony-murder, MCL 750.316(b), one count of possession of a firearm during the commission of a felony, MCL 750.227b, and one count of unlawfully driving away an automobile, MCL 750.413. All of those convictions resulted from an incident that took place on April 19, 1997, in which defendant left his home with a loaded gun and rode three miles on his bicycle to the victims' house. Once at their house, defendant broke in, intending to steal their car. While inside the house, defendant came upon the victims as they slept in their bed, and defendant shot and killed both of them. Defendant then drove away in the victims'

car, which he eventually drove into a ditch. During a police interview, defendant confessed to the killings.

Defendant—who was 14 years old at the time of the killings—received prison terms of life without the possibility of parole. Following the United States Supreme Court's decisions in *Miller*, 567 US 460, and *Montgomery*, 577 US 190, and the enactment of MCL 769.25 and MCL 769.25a governing the sentencing of juvenile offenders, defendant moved for resentencing, which the trial court granted. The prosecution initially sought resentencing to imprisonment for life without the possibility of parole, but later withdrew that request.

The trial court conducted a two-day resentencing hearing in January 2022 where defendant asked to be resentenced to a term of years near the low end of the statutory range, which called for a minimum prison term between 25 and 40 years' imprisonment. The prosecution asked the court to impose a minimum sentence of 40 years. In support of his requested sentence, defendant offered testimony from Dr. Carol Holden, a psychologist who reviewed defendant's records and examined him, and Patricia Caruso, a former prison warden and former director of the Michigan Department of Corrections, who testified about defendant's behavior during his incarceration. Defendant also presented a witness who described a reentry plan for defendant, and a couple with whom defendant had corresponded while incarcerated. The trial court also heard from relatives of the victims who provided victim-impact statements.

On January 28, 2022, the trial court rendered findings of fact and conclusions of law from the bench. The trial court explained that it had relied on the *Miller*[1] factors and the *Snow*[2] factors. The trial court referred to the lack of guidance in MCL 769.25 for sentencing in cases such as this where life without the possibility of parole was not requested. In explaining its sentences, the trial court stated that it did not think defendant's prison record could support a finding that he had been rehabilitated, although the trial court acknowledged the progress defendant had made during his incarceration. The trial court noted recent incidents of misconduct in which defendant had engaged while incarcerated, including an assault on a staff member. The trial court explained that it did not believe defendant had been rehabilitated "at this point" and discussed its duty to protect the public. The trial court considered the circumstances of the crime, observing that defendant rode his bicycle a great distance carrying a loaded gun, that defendant was not coerced into committing the crimes, and that the case involved "immense collateral damage." In addition, the trial court discussed the evidence concerning the brain function of juveniles. The court ultimately adopted the prosecutor's recommendation and sentenced defendant to serve 40 to 60 years in prison. This appeal followed.

## II. LEGAL ANALYSIS

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). A trial court must "exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality." *Id*. at 183. An abuse of discretion occurs when the trial court's decision deviates from the range of principled outcomes.

---

[1] *Miller*, 567 US at 472-473.

[2] *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

*People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). In cases reviewing sentences under MCL 769.25 for juvenile offenders, "fact-finding by the trial court is to be reviewed for clear error, any questions of law are to be reviewed de novo, and the court's ultimate determination regarding the sentence imposed is to be reviewed for an abuse of discretion." *People v Hyatt*, 316 Mich App 368, 423; 891 NW2d 549 (2016).

The terms of MCL 769.25 "appl[y] to a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2)," which includes MCL 750.316 (covering felony-murder predicated on a home invasion). MCL 769.25(1). Under MCL 769.25(2), the prosecutor "may file a motion . . . to sentence a defendant described in subsection (1) to imprisonment for life without the possibility of parole" for listed crimes. If the prosecutor does not request a sentence of life without parole, or the trial court denies the prosecutor's motion, "the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." MCL 769.25(9).

## A. PROPORTIONALITY

Defendant asserts that the sentences imposed were not proportionate to the offense and the offender because the trial court failed to adequately consider two of the five *Miller* factors, i.e., (1) defendant's youth at the time of the offense and (2) his family and home environment as it existed before the crime was committed. In addition, defendant insists that the trial court's determination concerning defendant's potential for rehabilitation was contrary to the evidence and a mistake of law.

The reasonableness of a prison sentence is determined by evaluating whether the trial court violated the principle of proportionality, which requires a sentence imposed by the trial court to be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted). When sentencing a juvenile offender to a term of years, "consideration of youth and its attendant circumstances" is required, as youth is a circumstance of the offender. *Boykin*, 510 Mich at 188. "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense" (the *Snow* factors). *Id*. at 183, citing *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

Youth is a mitigating factor that affects the consideration of the *Snow* factors. *Boykin*, 510 Mich at 188-189. Our Supreme Court has stated that, "in all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor." *Id*. at 189. But "trial courts need not articulate their bases for considering an offender's youth during sentencing hearings conducted under MCL 769.25 and MCL 769.25a in which the offender is sentenced to a term of years." *Id*. at 190. As our Supreme Court explained, "never before have we imposed a requirement that a sentencing court give a detailed on-the-record explanation of one or more specific factors, and we do not impose such a requirement" in any case involving a juvenile offender. *Id*. at 192. When sentencing a juvenile defendant to a term of years, "sentencing courts should be guided by the *Snow* factors, which necessarily include consideration of youth as a mitigating factor." *Id*. at 196.

When sentencing a juvenile defendant pursuant to MCL 769.25 to a term of years, the trial court must consider the offender's youth. In contrast, before a trial court may sentence a juvenile defendant to life without parole, the trial court must conduct a hearing where it considers the *Miller* factors and "shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed." *Id*. at 191 (quotation marks and citation omitted). The requirement that a sentencing court must conduct a hearing at which it considers the *Miller* factors is expressly imposed by statute if the prosecution is seeking a sentence of life without parole. MCL 769.25(6). Conversely, no such statutory requirement exists when the prosecution is merely seeking a sentence of a term of years.

In *People v Taylor*, 510 Mich 112, 126; 987 NW2d 132 (2022), our Supreme Court offered the following summary of the *Miller* factors:

> Those "*Miller* Factors" are: (1) the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the juvenile's family and home environment—"from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "the incompetencies of youth," which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's "possibility of rehabilitation."

Regarding rehabilitation, the United States Supreme Court has noted that a sentence of life without parole "forswears altogether the rehabilitative ideal," and "reflects an irrevocable judgment about [an offender's] value and place in society, at odds with a child's capacity for change." *Miller*, 567 US at 473 (citations omitted; brackets in original).

## 1. YOUTH

In this case, defendant was 14 years old when he committed the offenses for which he was resentenced. During the resentencing hearing, the trial court discussed its obligation to consider the *Snow* factors and stated that it had considered the *Miller* factors. Because the prosecution was not pursuing a sentence of life without parole, the trial court was not required to apply the *Miller* factors. The statutory requirement that a trial court consider the *Miller* factors when sentencing a juvenile defendant applies only when the trial court is considering a sentence of life without parole. MCL 769.25(6).

Our Supreme Court has ruled that, when sentencing a juvenile defendant to a term of years under MCL 769.25 or MCL 769.25a, the trial court should consider the *Snow* factors, and that the defendant's youth as a mitigating factor will "factor into *Snow*'s four considerations." *Boykin*, 510 Mich at 189. Following that guidance, the relevant considerations for the trial court here were the *Snow* factors and the extent to which defendant's youth served as a mitigating factor. *Id*. Neither caselaw nor statute required the trial court to analyze the *Miller* factors in this scenario. See *id*.; MCL 769.25(6).

-4-

Defendant claims that the trial court did not adequately account for his youth at the time of the crimes. At the conclusion of the resentencing hearing, the trial court noted that defendant was 14 years old and cited the testimony from a doctor that "a child's brain at fourteen is not the same as it would be as an adult, that juveniles are not as capable as adults, and these are things consistent with the *Miller* case." The trial court also stated that it had "reviewed all the documents and there have been a lot of them," and "considered the testimony of the witnesses, the statements of the victims, the statement of the defendant." The trial court further noted the prosecutor's argument that "just because you are fourteen years, ten months old, that shouldn't mean you should get the least amount of time on a double homicide." The record reflects that the trial court did consider defendant's youth along with information about the intellectual development of adolescents.

Defendant insists that, although the trial court acknowledged the relatively underdeveloped brain of an adolescent, it did not adequately provide meaningful analysis about how this mitigating factor applied to the sentencing decision, other than stating defendant's age at the time the offenses occurred. However, "[t]he requirement to consider youth at sentencing is not necessarily the same as a requirement to articulate the *Miller* factors on the record during a sentencing hearing." *Boykin*, 510 Mich at 190. Indeed, the trial court's obligation to consider "the mitigating qualities of youth within *Snow's* sentencing criteria stops short of requiring trial courts to articulate a basis on the record to explain how youth affected the sentence imposed." *Id*. at 193. Here, the trial court did not provide a detailed analysis of how the evidence pertaining to the general development of the pre-adult brain influenced defendant's actions at the time of the crimes, but *Boykin* does not require such analysis. The trial court considered evidence that an adolescent brain has diminished capacity relative to adults, thereby revealing that the court understood that youth was a mitigating—rather than aggravating—factor. Therefore, the record establishes that the trial court treated its obligation to consider defendant's youth seriously and articulated on the record that it had done so. "[T]here is no authority that imposes a higher standard of articulation regarding youth beyond our general requirement that a trial court must adequately explain its sentence on the record in order to facilitate appellate review." *Id*. at 194. Therefore, defendant has failed to establish that the trial court did not adequately consider his youth in fashioning his sentences.

## 2. HOME ENVIRONMENT

Defendant alleges that the trial court did not adequately consider his home environment as a mitigating factor as required by *Miller*. Indeed, there was evidence presented at the resentencing hearing suggesting defendant grew up in a poor home environment. The trial court, in ruling from the bench, acknowledged defendant's "bad home life." The trial court made that acknowledgment even though it was not required to consider this (or any other) *Miller* factor because the trial court was not considering sentencing defendant to life without the possibility of parole. *Id*. at 189-190. Because the trial court was not obligated to consider that factor at all, defendant's contention that the trial court did not adequately consider that factor is inconsequential. Thus, the trial court did not err by offering no explanation of how defendant's home environment influenced the sentences that he received.

## 3. REHABILITATION

Defendant does not fault the trial court for failing to assess his potential for rehabilitation.[3] Instead, defendant insists that the trial court's determination about the possibility of rehabilitation was contrary to the evidence presented. Defendant also asserts that the trial court misapplied the law relating to this factor because the trial court focused upon whether defendant was rehabilitated at the time of resentencing. As we have explained throughout this opinion, the trial court was not required to consider defendant's "possibility of rehabilitation" as referenced in *Miller*, 567 US at 478.[4] Rather, the trial court simply had to consider the "reformation of the offender," as referenced in *Snow*, 386 Mich at 592. After weighing the evidence, the trial court found that defendant had not yet been adequately rehabilitated and needed further time for rehabilitation.

Defendant cited testimony from Dr. Holden that defendant had been rehabilitated and from Caruso that defendant had used his incarceration in a "productive" and "positive" manner, earning assignments that allowed him to help others. The trial court noted that progress. But the evidence also established that defendant had amassed a significant number of misconduct tickets, including for aggressive episodes and alcohol possession. The trial court further expressed "grave concern" because of an instance of threatening and aggressive behavior by defendant that had occurred "very recently." The trial court's determination that defendant had yet to be rehabilitated was not clearly erroneous, and defendant's claim that this determination was contrary to the evidence is meritless.

Defendant contends that the trial court should have considered whether he could have been rehabilitated in fewer than the 40 years of his minimum sentence, rather than whether he had been rehabilitated at the time of resentencing. The caselaw defendant cites in support of that argument addressed a sentence of life without parole, so it is inapplicable here. Defendant suggests that the trial court was under the mistaken belief that its only sentencing options were 25 years or 40 years, so it failed to consider a sentence between those two options. But there is nothing in the record to support the suggestion that the trial court was operating under a mistaken belief that its only options were to sentence defendant to either 25 or 40 years and it could not sentence defendant to anything between those two options. Consequently, defendant's unsupported assumption that the trial court operated under that mistaken belief is unpersuasive. Therefore, we conclude that the trial court's

---

[3] Defendant titled this section of his brief: "The sentencing court did not adequately account for [defendant's] rehabilitative potential . . . ." But defendant did not articulate an argument in support of that assertion. Moreover, the trial court discussed defendant's rehabilitation at length and made it clear that potential for rehabilitation was an important consideration in the sentences it imposed.

[4] The United States Supreme Court's explanation of why the potential for rehabilitation is crucial to consider when evaluating whether to sentence a juvenile defendant to life without the possibility of parole—in part that such a sentence is "at odds with a child's capacity for change," *Miller*, 567 US at 473—highlights why the *Miller* factors are inapplicable when the sentence being considered is a term of years. When the only sentence being considered is a term of years, then the sentence will not "forswear[] altogether the rehabilitative ideal," nor will it reflect "an irrevocable judgment about an offender's value and place in society." *Id*. Consequently, it was not the "possibility of rehabilitation" as contemplated by *Miller* that the trial court should have assessed in this case, but rather the "reformation of the offender" as contemplated by *Snow*.

sentence of 40 to 60 years' imprisonment was not disproportionate with respect to the offenses or the offender.

## B. PREMEDITATION

Finally, defendant claims that the trial court erred by suggesting that defendant's crime was premeditated or planned even though he was convicted of felony-murder, rather than premeditated murder. On three occasions during its explanation of the sentences, the trial court recounted that defendant rode his bike a great distance to the victims' house, expressed its belief that defendant purposefully selected the particular victims, and reiterated that the victims' family member termed the killing "premeditated." Defendant asserts that the trial court erroneously sentenced defendant for an offense for which he was not convicted. But the trial court did not state that defendant was convicted of premeditated murder. Moreover, the circumstances of the killings described by the victims' family, the trial court, and the prosecutor are relevant to the *Snow* objectives concerning the protection of society, punishment of the criminal, and deterrence of others. *Snow*, 386 Mich at 592. For these reasons, the trial court committed no error by describing the circumstances and defendant's actions leading up to the murders. Thus, defendant has not demonstrated that the trial court committed legal error or otherwise abused its discretion at the resentencing hearing.

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates