*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES GREGORY EADS,

        Defendant-Appellant.

FOR PUBLICATION
January 16, 2025
12:13 PM

No. 357332
Wayne Circuit Court
LC No. 92-007359-01-FC

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

MURRAY, P.J. (*dissenting*).

The majority opinion concludes that, under *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022), and *People v Bullock*, 440 Mich 15; 485 NW2d 866 (1992), defendant's individualized sentence to a term of years for his conviction of second-degree murder is unconstitutional as a cruel or unusual punishment.[1] It then concludes that the sentence is also an unconstitutional cruel

---

[1] It is not an efficient use of resources to provide another detailed view as to how our state Supreme Court has gone astray from the holding of *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), to impose new constitutional sentencing requirements on sentencing decisions that do *not* involve mandatory sentences imposing the harshest possible sentence of life without the possibility of parole. I have done so before, *People v Jackson*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2024 (Docket No. 361540) (MURRAY, J., concurring), as have others. See *People v Boykin*, 510 Mich 171, 207-224; 987 NW2d 58 (2022) (ZAHRA, joined by VIVIANO, JJ., dissenting); *People v Parks*, 510 Mich 225, 278-300; 987 NW2d 161 (2022) (CLEMENT, C.J., joined by ZAHRA and VIVIANO, JJ., dissenting); *Stovall*, 510 Mich at 360-361 (ZAHRA, J., joined in large part by CLEMENT, C.J., and VIVIANO, J., dissenting) ("Each of these cases, standing alone, represents a significant departure from our jurisprudence in this area of the law. But taken as a whole, a bare majority of this Court (in all of the cases but *Boykin*) has dramatically rewritten the sentencing laws applicable to young people who commit society's most heinous crimes. Defining crime and fixing punishment is emphatically a legislative task, in that it presents profound questions of policy and moral judgment best left for the Legislature to establish,

-1-

or unusual punishment because it is a disproportionate sentence. For the reasons explained below, the majority incorrectly relies upon *Stovall* in reviewing defendant's individualized, term-of-years sentence. Instead, the controlling decision is *People v Boykin*, 510 Mich 171-178; 987 NW2d 58 (2022), which requires a sentencing court to consider the circumstances of youth when sentencing a juvenile (defined by the Michigan Supreme Court as 18 or younger, at least for now) convicted of second-degree murder. And here the record shows that the trial court did consider defendant's age, his poor upbringing and childhood, and other appropriate factors as required under *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972). Thus, defendant's sentence is constitutionally sound, and should be affirmed.

## I. *BULLOCK* DOES NOT APPLY

The majority's first conclusion is that under the four *Bullock* factors the 50 to 75-year sentence is unconstitutionally cruel or unusual. But *Bullock*, *Stovall*, *People v Parks*, 510 Mich 225, 232; 987 NW2d 161 (2022), and other cases all addressed statutorily prescribed sentences, most of which were mandatory. They were not reviewing an individualized, term-of-years sentence. *Bullock*, for example, addressed a challenge to the mandatory sentence of life without parole for possessing 650 grams or more of cocaine, see *Bullock*, 440 Mich at 21, while *People v Lorentzen*, 387 Mich 167, 170-171; 194 NW2d 827 (1972), upon which much of *Bullock* is premised, addressed a mandatory minimum of 20 years for possession of any amount of marijuana. *Stovall*, 510 Mich at 307-308, addressed the maximum statutory punishment for second-degree murder (as to those under 19) of life with the possibility of parole, while *Parks* addressed a challenge to mandatory life without parole for those under 18 convicted of first-degree murder, *Parks*, 510 Mich at 232.

In each of these decisions the Court applied the four-part *Bullock/Lorentzen* test to determine whether the specific statutory punishment was cruel or unusual under Article 1, § 16 of the Michigan Constitution. And, when looking at that four-part test, it seems evident that it is geared to testing the constitutionality of a specific, mandated statutory punishment, as it requires the reviewing court to compare the sentence mandated by the Legislature for the crime at issue with other statutory penalties in this state and across the nation. See *Bullock*, 440 Mich at 33-34 (requiring courts to consider, inter alia, the penalty imposed for the offense compared to penalties imposed on other offenders in the same jurisdiction, and the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states).

In applying that test, it is simply a matter of legal research to determine what the statutory punishment is for similar crimes here, and for the same offense in other states. A comparison is then made between what the Michigan Legislature deemed an appropriate sentence, and what other state legislative bodies have imposed for the same crime. But when a sentence is individualized, that comparison cannot be made by simply examining what other statutes in this or other states require, as an individualized, term-of-years sentence (particularly when not subject to a maximum

---

not for a slim majority of this Court to prescribe by judicial fiat."); *People v Abbatoy* ("*Abbatoy I*"), unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 357766) (BOONSTRA, J., concurring).

cap) is based upon the defendant's background, the facts and circumstances of the crime, and other relevant criteria considered in tailoring a proportionate sentence. In other words, individual, term-of-years sentences are not subject to comparison with mandatory statutory sentences when the underlying basis for those sentences is the particular and varying facts of the case.

Perhaps that is why, in the only recent challenge under *Parks* to a term of years sentence, the Court did not employ the *Bullock/Lorentzen* test, but instead held that to be constitutional, and consistent with the proportionality factors articulated in *Snow* and *People v Milbourn*, 435 Mich 630, 659-661; 461 NW2d 1 (1990), the attributes of youth of an offender under the age of 19 must be considered in rendering the individualized sentence. As the *Boykin* Court held, 510 Mich at 188-189:

> Our sentencing caselaw focuses on the principle of proportionality, which requires sentences imposed "to be proportionate to the seriousness of the circumstances surrounding the offense *and the offender*." *Milbourn*, 435 Mich at 636 (emphasis added). Accordingly, because the Supreme Court has held that youth—a circumstance of the offender—matters at sentencing, our own caselaw requires that such a relevant offender characteristic must be considered at sentencing. In *Snow*, this Court decided the legality of a sentence that was made harsher because the defendant decided to face trial rather than plead guilty. In holding that the defendant was entitled to resentencing because the record was silent about why the defendant's sentence departed from the ordinary minimum sentence, this Court expressed the importance of four basic sentencing considerations. *Snow*, 386 Mich at 592, 594. Those four considerations are: (1) "reformation of the offender"; (2) "protection of society"; (3) "disciplining of the wrongdoer"; and (4) "deterrence of others from committing like offenses." *Id*. at 592.

> Youth affects these considerations. For example, since "a greater possibility exists that a minor's character deficiencies will be reformed," the mitigating qualities of youth necessarily transform the analysis of the first *Snow* criterion. *Roper* [*v Simmons*], 543 US [551,] 570[; 987 NW2d 58 (2022)]. Without considering the mitigating factors of youth, then, a sentence cannot adequately address the reformation of the offender. Next, because youth have a "heightened capacity for change" relative to adults, the needs for protecting society should be given individualized consideration, which necessarily considers the way youth affects the defendant's ability to change. *Miller*, 567 US at 479; see also *Jones* [*v Mississippi*], 593 US [98, 145] n 7[;141 S Ct 1307; 209 L Ed 2d 390 (2021)] (Sotomayor, J., dissenting) (explaining that "[t]he Eighth Amendment requires that sentencers (and reviewing courts) not presume that most juveniles will forever remain the 'murderers' they once were") (citation and comma omitted). In addition, because it is "less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character," *Snow*'s focus on discipline of the wrongdoer must be viewed differently under the lens of youth. See *Roper*, 543 US at 570. "Nor can deterrence do the work in this context, because ' "the same characteristics that render juveniles less culpable than adults" ' . . . make them less likely to consider potential punishment." *Miller*, 567 US at

472, quoting *Graham* [*v Florida*], 560 US [48,] 72[; 130 S Ct 2011; 176 L Ed 2d 825 (2010)], quoting *Roper*, 543 US at 71. Given that youth is a mitigating factor, it will inevitably factor into *Snow*'s four considerations.

See also *People v Cash*, 419 Mich 230, 246 n 14; 351 NW2d 822 (1984) ("[S]ome mitigating factors which a trial judge may take into consideration in imposing a sentence are the relative ages and relationship of the parties involved. We note that a more sympathetic sentencing situation would have been presented than in the case at bar had a 17-year-old defendant been prosecuted for relations with his almost 16-year-old girlfriend."); *People v Wines*, 323 Mich App 343, 351-352; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020).

For these reasons, a *Bullock/Lorentzen* analysis of defendant's individualized, term-of-years sentence is not legally appropriate. Instead, as the *Boykin* Court instructed, the question to decide is whether the trial court considered defendant's attributes of youth (and other *Snow* factors) when imposing this individualized, term-of-years sentence. And in undertaking that task, the record compels the conclusion that defendant's sentence is constitutionally sound.

## II. DEFENDANT'S YOUTH WAS CONSIDERED AT SENTENCING

Even with the broad extension of *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012) and its progeny in *Boykin*, in rendering this second-degree murder term of years sentence, the trial court unequivocally considered defendant's age and "attributes of youth" when sentencing him in 1993.[2] Because the sentence was imposed only after considering defendant's age, upbringing, and other similar characteristics, and because (as we held in the prior appeal) the sentence was proportionate to the seriousness of the crime and the offender, the sentence was not unconstitutional under *Boykin*.[3]

Recently, in *People v Copeland*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925), the Court outlined the individualized sentencing that a trial court must engage in when sentencing a defendant under the age of 19:

> In [*Boykin*, 510 Mich at 189], our Supreme Court held that when sentencing a juvenile defendant to a term-of-years sentence under MCL 769.25a, the sentencing court must still consider the defendant's youth and treat it as a mitigating factor. The Court explained that the touchstone of any sentencing decision is proportionality, which looks to the circumstances of the offense and the background of the offender. *Id*. at 188. Since a defendant's youth is part of a juvenile

---

[2] The judicial sentencing guidelines applied when defendant was sentenced, see MCL 769.34 and *People v Reynolds*, 240 Mich App 250, 253-254; 611 NW2d 316 (2000), and those guidelines required the trial court to explain why a sentence deviated above or below the recommended range, which the trial court recognized during sentencing, *People v Kowalski*, 236 Mich App 470, 473; 601 NW2d 122 (1999).

[3] This analysis assumes that *Boykin* is not limited to sentences imposed under MCL 769.25 or MCL 769.25a. See *People v Eads*, 512 Mich 918 (VIVIANO, J., joined by ZAHRA, J., dissenting).

defendant's background, courts must consider the characteristics of youth before sentencing a juvenile defendant in order for the resulting sentence to be proportionate. *Id*.

In practical terms, this means that courts should consider a defendant's youth as part of the "four basic sentencing considerations" first identified in *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972), which courts must always bear in mind before imposing a sentence. *Boykin*, 510 Mich at 188-189. Those considerations are "(1) 'reformation of the offender'; (2) 'protection of society'; (3) 'disciplining of the wrongdoer'; and (4) 'deterrence of others from committing like offenses.' " *Id*. at 188, quoting *Snow*, 386 Mich at 592. "Youth affects these considerations," *Boykin* explained, such that youth "will inevitably factor into *Snow*'s four considerations." *Boykin*, 510 Mich at 188-189.

But *Boykin* rejected the idea that trial courts sentencing juvenile defendants are required to articulate "*specific* factors on the record." *Id*. at 192. *Boykin* instead recognized the general rule that sentencing courts in Michigan must justify an imposed sentence in a manner sufficient to facilitate appellate review, and held that this was the same standard that applied to courts sentencing juvenile defendants. *Id*. "[N]ever before have we imposed a requirement that a sentencing court give a detailed on-the-record explanation of one or more specific factors, and we do not impose such a requirement here." *Id*.

Along similar lines, *Boykin* reiterated that courts are required to "consider[ ] the mitigating qualities of youth within *Snow*'s sentencing criteria," but said that this "stops short of requiring trial courts to articulate a basis on the record to explain how youth affected the sentence imposed." *Id*. at 193. A trial court sentencing a juvenile defendant will necessarily consider the defendant's youth and treat it as a mitigating factor, *Boykin* reasoned, because no " 'meaningful daylight exists between (i) a sentencer's discretion to consider youth, and (ii) the sentencer's actual consideration of youth,' " so " 'it would be all but impossible for a sentence to avoid considering that mitigating factor.' " *Id*. quoting *Jones v Mississippi*, 593 US 98, 114; 141 S Ct 1307; 209 L Ed 2d 390 (2021).

*Boykin* accordingly held that trial courts sentencing juvenile defendants are required to consider a defendant's youth and treat it as a mitigating factor, but "this consideration need not be articulated on the record." *Boykin*, 510 Mich at 193-194. "[T]here is no authority that imposes a higher standard of articulation regarding youth beyond our general requirement that a trial court must adequately explain its sentence on the record in order to facilitate appellate review." *Id*. at 194. [*Copeland*, ___ Mich App at ___; slip op at 3-4.]

As *Copeland* made clear, to be constitutional under the Michigan constitution, *Boykin* held that a discretionary term of years sentence (remember, *Miller* only dealt with mandatory life without parole sentences, and nothing more) for first-degree murder must include a consideration of the 18-year-old or less defendant's attributes of youth.

The majority recognizes that the trial court *did* consider the attributes of defendant's youth at the time of sentencing, but it holds that the trial court did not consider those attributes as *mitigating* factors. As explained below, the record simply does not support that conclusion.

We review for an abuse of discretion whether a trial court properly imposed a sentence that was proportionate to the offender and offense, *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), and in doing so we must be mindful that "[a]t its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome," *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Just because two (or four, depending on the court) appellate judges would not have imposed the same sentence does not necessarily render the sentence an abuse of discretion. *Dep't of Transportation v Randolph*, 461 Mich 757, 768; 610 NW2d 893 (2000) (an abuse of discretion involves more than differing opinions).

Although an unusually excessive sentence is forbidden by Article 1, § 16 of the Michigan Constitution, *Parks*, 510 Mich at 241, because "our Constitution requires that sentencing decisions be proportional," *id*., a proportionate sentence is not an unconstitutional cruel or unusual punishment, *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Again, the relevant *Snow* factors are: "(1) 'reformation of the offender'; (2) 'protection of society'; (3) 'disciplining of the wrongdoer'; and (4) 'deterrence of others from committing like offenses.' " *Boykin*, 510 Mich at 188, quoting *Snow*, 386 Mich at 592.

In considering these factors, "a trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender in an effort to balance society's need for protection against its interest in rehabilitation of the offender." *People v Sabin (On Second Remand)*, 242 Mich App 656, 661; 620 NW2d 19 (2000).

Here the trial court was presented with a wealth of information about defendant and the crime he committed. The court reviewed a presentence investigation report, a victim's impact statement, and reports from several psychologists and experts that analyzed defendant, including his background, his chances for rehabilitation, and his difficult upbringing. The court also addressed deterrence, which was particularly relevant given defendant's gang membership and its prevalence during trial (both in the evidence, and with allegations of witness tampering). In other words, the court considered all of the *Snow* factors.

As to defendant's age, during the sentencing hearing defense counsel pressed upon the circuit court the young age and terrible circumstances that defendant experienced dating back to pre-adolescence:

> *Mr. Barney* [defense counsel]: Just in brief response, your Honor, based on my interaction with this Defendant, *I'd have to agree with -- I mean, with the writer of -- who would indicate that this young man is a kid for all practical purposes, even though he's had to survive on the street since he's 11 years old virtually with no adult supervision, and fend for himself.*

\* \* \*

*Mr. Barney*: Your Honor, I've had a chance to read this. *I couldn't agree with the assessment more. I mean, this -- this writer hits the nail on the head. He shows that my client at 11 years old was subjected to an extremely traumatic event, the death of his father, that there was absolutely no treatment whatsoever given to this young man as a result of the depression and all that he experienced, and in fact, that it says is that he was turned out onto the streets, and he had to fend for himself, that he's showed manic depressive behavior, and the fact that he was a daily abuser of alcohol and marijuana indicates that, your Honor, that there was – that there was absolutely no guidance or moral compass that was provided to this Defendant as a result of his familiar problems, your Honor.*

However, your Honor, I would indicate that the presence of Mr. Brown here and my discussions with the Defendant, and not only Mr. Brown but *other males who have had access to Defendant at the youth home suggest what this writer seems to suggest, that in the appropriate environment that this young man, one, can learn, that he can develop the kind of social skills that will alleviate the antisocial behavior that he's expressed, especially with respect to his gang activity, and that in sentencing this young man the Court should consider the extreme traumatic effects.* And I –

Soon after, defendant had the opportunity to address the court, and in doing so he reiterated the difficult circumstances he experienced since age 11, leading to the murder he committed at age 16:

*Mr. Eads*: I have lived on my own since I was 11 years old. I'm just 17 years old now, so what type of mature decisions could I have made at the time when I left placement?

With all that information available and digested, the court provided a detailed explanation for why a 50 to 75-year sentence was proportionate to defendant and the crime he committed:

*The Court*: Well, I've read all the reports on this, and I apologize that you didn't get that one report. […] But I read it, and [Donald M. Haytch, M.S. is] the one person who recommended placement in a juvenile facility. But he's a person who speaks only from theory, Mr. Barney. All these people who have actually dealt with Mr. Eads have said that he has exhausted the facilities available in juvenile placement, and that he is a disruptive influence on all the other people, and in fact in one of the facilities, he organized a gang, The Force, and physically assaulted other people who were inmates in those facilities. And I have to say this, Mr. Barney. I've been a judge for 17 years. I have never departed from the sentencing guidelines since they have been instituted, but I am going to depart from them in this case. If there was ever a crime that had no provocation at all to be committed, it's your client's. I don't care if the man wore a T-shirt that said 'Kill All Latin Counts' or 'Kill James Gregory Eads.' Shirts and words do not kill. He was driving by in a car. All he had to do was keep going. He didn't have to stop and do anything.

So—and I do not accept the philosophy that a person is— people commit crimes because of their environment. Many people who come from the same environment of Mr. Eads, the majority of them have remained law abiding citizens. That's not true. All gangs are a tremendous evil in this society, especially in the area where he lives. In this case, I had to have one witness who was held in custody because of threats from gang members. We had another one we had to issue a warrant for their arrest because of threats from gang members. From the trial, we had at least two people. So, that influence is just tremendous in this area, and I think it's important for Mr. Eads and all members of gangs to realize that society does not tolerate that. The only rules that society tolerates are the rules that society creates, not the rules of some organization like a gang with special interests to enhance and promote their own membership. And so, *I find first of all there's nothing that a juvenile facility could do for him.* First of all, I don't think he'd be there for 19 days let alone for 19—until he's age 19. *Every opportunity he had being put in the juvenile facility, he didn't accept any help from that facility whatsoever. He would either truant himself or not participate in the classes, and would not avail himself of the help that was available to him, and this crime would have been avoided if he had done that. So, in this Court's view, there's nothing—he's exhausted anything that the juveni le facilities can give him.* He would be disruptive to any juvenile facility, and in my opinion they would be unable to maintain him there even if he were sentenced as a juvenile. So, the decision of this Court—and as I say, I consider this to be the most unprovoked crime I've ever had in my 17 years as a judge. There's no provocation, there's no reason to have killed this person. Because they're wearing a shirt?

How could you kill someone because they were wearing a shirt that is of a group that you dislike? I don't care what that shirt said. It could never be justification for killing anyone— […] So, *I find first of all that he should be sentenced as an adult.* Anyone who had dealt with him practically, has experienced dealing with him, says he should be sentenced as an adult. The only person contrary to that is a person who talked to him for a short period of time, and theoretically comes to a conclusion that I find completely unjustified by the practical experience of everyone who had dealt with him. And maybe your client can be rehabilitated, but I think it takes a long time for close supervision and training and demonstration—a long period of time, not just words—a long period of time under close supervision to develop the discipline and skills and self restraint that's needed in a civilized society like ours, and so other people also in the community who are gang members or think that— that there's any future or any benefit from gang membership will be dissuaded of it, and even [the victim's mother] said that she has been threatened because of her position of wanting Mr. Eads to be punished for what he did, and there's no doubt he committed the murder, and no doubt that he had no justification.

In defendant's original appeal of the trial court's sentence, he argued that his above-guidelines sentence was disproportionate in light of his age and circumstances. We rejected that argument, holding that the trial court adequately explained the basis for the sentence, and the length of that sentence:

We find no merit in defendant's arguments concerning the trial court's reasons for exceeding the guidelines' minimum sentence range for the second-degree murder conviction. Defendant was a member of a gang called "The Latin Counts". The court's reasons for departure included: that the attack resulting in the victim's death was unprovoked; defendant's gang activities; defendant's exhaustion of any rehabilitative services the juvenile facilities had to offer; defendant's disruptive influence while in the juvenile facilities, including organizing a new gang while in one of the facilities and physically assaulting other inmates in those facilities; the need for a long period of rehabilitation under close supervision, and the need to deter others from becoming involved in gang memberships. While the trial court stated as one of its reasons for departure the actions of gang members towards witnesses, it was but one reason of many given for an upward departure from the sentencing guidelines.

The court also noted that the defendant had a life expectancy of 53.11 years, and that defendant's sentence should not afford him with a chance for parole until defendant reaches an age "where he would not be a danger to society". We find these reasons sufficient to depart upward from the sentencing guidelines' range. [*People v Eads*, unpublished per curiam opinion of the Court of Appeals, decided November 9, 1994 (Docket No. 160735), p 1.]

This record evidences the fact that the trial court was presented at sentencing with facts and arguments about defendant's age, which included his homelessness and gang affiliation when he was 11 years old, as well as his tenure at myriad juvenile facilities. And, this Court upheld the departure sentence because the court provided a plethora of reasons in support of the upward departure. Thus, there can be no question but that defendant's age was considered at sentencing, a fact that, as mentioned, the majority does not discount.[4]

Instead, the majority concludes that the court did not consider defendant's age as a mitigating factor in sentencing him. But neither Michigan nor federal law requires that a court place it's age-based considerations on the record. *Boykin* quoted *Jones*, 593 US at 108-109, for this very point:

[A]n on-the-record sentencing explanation is not necessary to ensure that a sentencer considers a defendant's youth. Jones's argument to the contrary rests on the assumption that meaningful daylight exists between (i) a sentencer's discretion to consider youth, and (ii) the sentencer's actual consideration of youth. But if the sentencer has discretion to consider the defendant's youth, the sentencer necessarily will consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth. Faced with a convicted murderer who was under 18 at the time of the offense and with defense arguments focused on the defendant's youth, it would be all but impossible for a sentencer to avoid

---

[4] In fact, one reason why defendant's age was addressed was because the court also had to determine whether, because of defendant's age, he should be sentenced as an adult.

considering that mitigating factor. [*Boykin*, 510 Mich at 193, quoting *Jones*, 593 US at 114 (alteration in original).]

Thus, the trial court does not have to articulate findings on the record regarding the extent of how these age-based considerations mitigated the sentence. Under *Boykin* and *Jones*, it is enough that defendant presented arguments and evidence regarding how young he was when he started using illegal drugs, left his home, joined a gang, and the other circumstances he experienced while a youth, prior to the crime. After considering that evidence, the court handed down the sentence it was permitted to impose, and that sentence was upheld on appeal. That was not constitutional error. All that *Boykin* requires is that the court take the mitigating circumstances of age into consideration (without having to state any findings on the record), and this record shows that the court did just that. Without a requirement to state how mitigating defendant's age was, and without an explanation about that on the record, it is unclear how the majority can determine that the court did not consider defendant's age a mitigating factor. Likely it is the majority's displeasure with the length of the sentence, but how do we know that the trial court would have imposed a longer sentence had defendant not been 17 years old? We don't, and because both *Boykin* and *Jones* explicitly state that a court "considers" the defendant's age when evidence is presented on it, the court satisfied its obligation and we can speculate no further.[5]

In *People v Adams*, 430 Mich 679, 686; 425 NW2d 437 (1988), the Court set forth the general obligations of a trial court in handing down a proportionate sentence:

> The Legislature has determined that the appropriate approach to sentencing is the individualization of a sentence to a given offender. MCL 769.8. To achieve this objective, a sentencing judge is afforded "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v New York*, 337 US 241, 246; 69 S Ct 1079; 93 L Ed 1337 (1949). "Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.*, p 247.

When imposing defendant's sentence, the trial court complied with *Milbourn*, *Snow*, and in the end *Boykin*, and rendered an individualized sentence that took into consideration defendant's youth and circumstances, as well as the crime committed, deterrence, and defendant's chance of rehabilitation.

---

[5] Additionally, it seems only logical that the age of a juvenile defendant would never be anything but mitigating. It would be rare indeed if a sentencing court took the position that a young defendant "should have known better" than to commit the crime, as these defendants normally have few life experiences. Age, at least in a common-sense manner, would only be considered an aggravating factor with an older, more mature defendant who indeed should have known better.

It may be that some jurists would not have given defendant such a long[6] sentence, and perhaps some others would have given a longer one.  But none of that should matter, as the governing standard of review is an abuse of discretion, and under that standard we cannot vacate a sentence merely because our views are different than that of the trial court.  After all, appellate judges are divorced from the trial and its mannerisms; we do not see and hear the witnesses, and we do not look into the eyes of the defendant or the victim's family at sentencing, where the sentencing court can see if a defendant is remorseful and is capable of rehabilitation.  See *People v Babcock*, 469 Mich at 268 ("It is clear that the Legislature has imposed on the trial court the responsibility of making difficult decisions concerning criminal sentencing, largely on the basis of what has taken place in its direct observation.").

The Michigan Supreme Court's current cruel or unusual punishment jurisprudence is quite subjective, offering judges the opportunity to set aside sentences that are deemed on appeal to be too severe.  Former Justice Dorothy Comstock Riley noted her concerns about courts applying a subjective constitutional test to overturn a sentence that does not square with the notions of justice of a majority of the judges reviewing the sentence:

> Thus, I write separately to express my concern that, from this day forward, the citizens of the State of Michigan may rightfully conclude that
>
> "[w]hat the Court means is that a sentence is unconstitutional if it is more severe than five Justices [or in this case four] think appropriate."  [*Bullock*, 440 Mich at 47 (RILEY, J., dissenting in part), quoting *Solem v Helm*, 463 US 277, 305; 103 S Ct 3001; 77 L Ed 2d 637 (1983) (BURGER, C.J., dissenting).]

It may well be that Justice Riley's concerns have come to fruition.  Defendant's sentence should be affirmed.

/s/ Christopher M. Murray

---

[6] The majority's conclusion that defendant was in essence given a "de facto" life sentence is inconsistent with binding authority, as we previously rejected this same argument for a defendant who was 31 and given a sentence of 50 to 75 years for assault with intent to murder.  See *People v Johnson*, 187 Mich App 621, 631; 468 NW2d 307 (1991) ("Defendant's argument that the fifty- to seventy-five-year sentence for the conviction of assault with intent to murder exceeds his life expectancy is without merit.  Defendant was thirty-one years old at the time of sentencing.  We conclude that it is reasonably possible for defendant to serve his minimum sentence").